770 N.W.2d 660 (2009)
17 Neb. App. 741
Barbara A. CLOETER, appellee,
v.
Kurt D. CLOETER, appellant.
No. A-08-1079.
Court of Appeals of Nebraska.
June 30, 2009.
*662 Dana M. London for appellant.
B. Gail Steen, of Steen Law Office, Norfolk, for appellee.
IRWIN, CARLSON, and MOORE, Judges.
MOORE, Judge.

INTRODUCTION
Barbara A. Cloeter filed a petition for a domestic abuse protection order against her ex-husband, Kurt D. Cloeter. The Lancaster County District Court entered an ex parte order granting the request. Kurt requested a hearing to show cause why the order should not remain in effect, following which, the court affirmed the protection order. This case was submitted without oral argument pursuant to Neb. Ct. R.App. P. § 2-111(B)(1). For the reasons set forth herein, we reverse, and remand with directions to vacate the protection order and dismiss the action.

BACKGROUND
Barbara and Kurt are divorced and have two children: a daughter who was born in 1990 and resides with Kurt and a daughter who was born in 2003 and resides with Barbara. Kurt has visitation with the younger daughter every other weekend from 6 p.m. on Friday to 6 p.m. on Sunday and every other Wednesday from 6 p.m. to the following Thursday morning at 8 a.m.
On July 11, 2008, Barbara filed a petition requesting a domestic abuse protection order against Kurt and an affidavit containing allegations supporting the request. Barbara's affidavit described the three most recent incidents of domestic abuse which occurred on June 6, 18, and 20, 2008. Barbara alleged that on June 6 at approximately 6:45 a.m., she received a text message from Kurt with the letters "E," "A," and "D." She sent him a text message which asked what that meant and received no response. Barbara alleged that Kurt then began sending one-letter text messages, and she reported this to the police. A police officer who responded noted that when the letters in the text messages were combined, they spelled out the word "behead." Barbara stated that she was very frightened by this threat and was afraid Kurt would behead her or her children.
Barbara's affidavit alleged the second incident occurred on June 18, 2008, at *663 about 6:15 p.m. Kurt arrived at her home to take the younger daughter for visitation and sent Barbara a text message with the letters "B" and "E." She stated that on June 11, Kurt sent her the text messages which spelled out the word "behead" and she notified the police and understood that the police contacted Kurt regarding the message. It is unclear from the record whether the June 11 incident was the same or a different incident from that which Barbara described as occurring on June 6. Barbara stated again that she feared he would attempt to behead her or her daughter. Barbara also stated that she was concerned that Kurt had abused animals in the younger daughter's presence during visitation and that this was harmful to her.
The final incident that Barbara described in her affidavit occurred on June 20, 2008. She stated that she found a 2-by 4-inch piece of wood (2 by 4) in her driveway. This was significant to her because previously, when she expressed to Kurt her fear that he would hurt her with a baseball bat, he allegedly responded: "`Why would I buy baseball bats when I could do the same with a 2 [by] 4?'" Barbara stated that Kurt had been released from jail the day before she found the 2 by 4 in her driveway and that therefore she viewed this as a threat.
The district court entered an ex parte domestic abuse protection order. The court found that Barbara had stated facts showing that Kurt attempted to cause, or intentionally, knowingly, or recklessly caused, bodily injury to Barbara, or by physical menace, placed Barbara in fear of imminent bodily injury. The order excluded Kurt from Barbara's residence, the hospital where Barbara worked, and a specific church. On July 11, 2008, Kurt was served with a copy of the protection order, and on July 14, he requested a hearing to show cause why the order should not remain in effect.
On September 12, 2008, the district court entered an amended domestic abuse protection order which allowed Kurt to be present at the younger daughter's school for school purposes and the hospital where Barbara worked to attend any medical appointments or treatments of the children.
On September 22, 2008, the district court held a hearing at Kurt's request allowing him to show cause why the protection order should not remain in effect. Both Kurt and Barbara testified at the hearing.
Kurt testified that during the past year when he had visitation with the younger daughter, he would normally pick her up at Barbara's home and would communicate that he had arrived by sending Barbara a text message. Kurt testified that to send Barbara a text message, he would usually select her telephone number and then "hit a couple letters or something." Kurt testified that he was "not an avid text messager," so his text messages had no words in them, "just randomly selected letters." Kurt testified that he never intended to send Barbara a text message, either at one time or in a series over a period of time, which would spell out the word "behead." With regard to the text message Barbara alleged she received from him on June 6, 2008. Kurt testified that there was no significance to the letters "E," "A," and "D," that he would have no reason to send her a text message at 6:45 a.m., that normally he would only send Barbara a text message right before he picked up his younger daughter, and that he would not have picked her up on that date at that time. With regard to the 2 by 4 that Barbara found in her driveway on June 20, Kurt offered into evidence four photographs, taken by the older daughter. Those photographs depict Barbara's home, *664 as well as the home directly across the street from hers, which was undergoing construction and demolition work. Kurt testified that he did not place the 2 by 4 in Barbara's driveway, did not have anything to do with a 2 by 4's being placed in her driveway, and believed that it could have come from the demolition project across the street. Kurt also denied killing animals in front of the younger daughter.
Barbara also testified at the hearing. She testified that she received Kurt's comment, "why would I use baseball bats when I could do the same thing with a [2 by 4]," in an e-mail approximately 2 years earlier. She could not recall what the rest of the e-mail said. Barbara also testified that the house across the street from her had been in that condition for more than a year and that there had been no other incidents in which a 2 by 4 or other spare building materials appeared in her driveway. According to Barbara, the 2 by 4 appeared in her driveway the day after Kurt was released from jail for violating a previous protection order against him. However, she did not see anyone put the 2 by 4 in her driveway. Barbara also testified that Child Protective Services was still investigating her allegation that Kurt killed animals in the younger daughter's presence and that she was still concerned for her and her children's safety. With regard to the text messages Kurt would send to her when he arrived to pick up the younger daughter, Barbara testified that he had previously sent a text message with the letter "A," and she did not remember him ever sending a text message with any other letter. On cross-examination, Kurt's attorney asked Barbara, "[I]s it correct that you didn't know if those text messages even spelled out the word `behead' until [a police] officer brought it to your attention?" Barbara responded, "I wasn't sure what he was trying to say." Barbara was also not sure whether the days on which those text messages were sent were the same days as Kurt had scheduled visitation with Rachel, but she acknowledged that if she received the messages on an alternating Friday or Wednesday, it would have been on the day of his visitation.
On September 22, 2008, the court entered an order which affirmed the domestic abuse protection order as amended on September 12. The district court made no specific factual findings, but concluded that Barbara had shown that Kurt "(1) attempted to cause, or intentionally, knowingly, or recklessly caused, bodily injury to [Barbara], or (2) by physical menace, placed [Barbara] in fear of imminent bodily injury." Kurt now appeals.

ASSIGNMENT OF ERROR
Kurt asserts, restated, that the trial court erred in affirming the domestic abuse protection order based on the evidence adduced at the hearing.

STANDARD OF REVIEW
A protection order pursuant to Neb.Rev.Stat. § 42-924 (Reissue 2008) is analogous to an injunction. Elstun v. Elstun, 257 Neb. 820, 600 N.W.2d 835 (1999). Accordingly, the grant or denial of a protection order is reviewed de novo on the record. Id. In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. Id. However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. Id.

ANALYSIS
The Protection from Domestic Abuse Act, Neb.Rev.Stat. § 42-901 et seq. *665 (Reissue 2008), allows any victim of domestic abuse to file a petition and affidavit for a protection order pursuant to § 42-924. Abuse is defined under § 42-903(1) as follows:
the occurrence of one or more of the following acts between household members:
(a) Attempting to cause or intentionally and knowingly causing bodily injury with or without a dangerous instrument;
(b) Placing, by physical menace, another person in fear of imminent bodily injury; or
(c) Engaging in sexual contact or sexual penetration without consent as defined in section 28-318.
The act defines "household member" to include a former spouse. § 42-903(3).
In the present case, the district court's form order states that Barbara showed that Kurt "(1) attempted to cause, or intentionally, knowingly, or recklessly caused, bodily injury to [Barbara], or (2) by physical menace, placed [Barbara] in fear of imminent bodily injury." However, Barbara did not allege, nor does the record show, that Kurt had caused her bodily injury. Accordingly, we limit our consideration to whether Barbara has shown that Kurt, by physical menace, placed her in fear of imminent bodily injury as required by §§ 42-903(1)(b) and 42-924. Kurt argues that there is no credible evidence that he engaged in any conduct constituting abuse as defined in § 42-903. He submits that even if Barbara's allegations are assumed to be true, the alleged conduct does not rise to the level of abuse within the meaning of the statute.
The terms "physical menace" and "imminent" as used in § 42-903(1)(b) are not defined within the statute. Two other Nebraska statutes contain the same terms as § 42-903: Neb.Rev.Stat. § 28-323(1)(b) (Reissue 2008), which proscribes third degree domestic assault, and Neb.Rev.Stat. § 29-404.02(1)(c)(ii) (Reissue 2008), which sets forth the instances in which a police officer may make a warrantless arrest; however, our research reveals no Nebraska case law construing the term "physical menace."
Case law construing "menace" is most common in the context of an assault cause of action. Kurt points to a Nebraska Supreme Court decision in which the court held that the term "menacing," as used in Neb.Rev.Stat. § 28-310 (Reissue 2008), which proscribes third degree assault, "commonly includes the showing of an intention to do harm." In re Interest of Siebert, 223 Neb. 454, 456, 390 N.W.2d 522, 524 (1986) (citing Webster's Third New International Dictionary, Unabridged 1409 (1981)). See State v. Smith, 267 Neb. 917, 678 N.W.2d 733 (2004). Webster's Third New International Dictionary, Unabridged, supra, defines "menace" as "to make a show of intention to harm: make a threatening gesture, statement, or act against." In its noun form, the word "menace" generally means a threat. See Webster's Encyclopedic Unabridged Dictionary of the English Language 894 (1983) ("something that threatens to cause evil, harm, injury, etc."); American Heritage Dictionary of the English Language, 4th ed. 1096 (2000) ("[t]he act of threatening"). However, in § 42-903(1)(b) the Nebraska Legislature specifically limited the definition of abuse to instances involving "physical menace." Other courts that have construed "physical menace" in the context of statutes proscribing assault have determined that the term necessarily requires more than words, that is, there must be some physical act on the part of the defendant. See, People ex rel. R.L.G., 707 N.W.2d 258 (S.D.2005); People v. Sylla, 7 Misc.3d 8, 792 N.Y.S.2d 764 (2005); McDonald v. State, 784 So.2d 261 (Miss. *666 App.2001) (Southwick, Presiding Judge, concurring; McMillin, Chief Judge, and Thomas, Judge, join). We agree and therefore conclude that "physical menace" as used in § 42-903(1)(b) means a physical threat or act and requires more than mere words.
The facts presented here also require us to construe the word "imminent," which neither § 42-903(1)(b) nor Nebraska case law defines. Black's Law Dictionary defines "imminent danger" as "an immediate, real threat to one's safety that justifies the use of force in self-defense" or "[t]he danger resulting from an immediate threatened injury sufficient to cause a reasonable and prudent person to defend himself or herself." Black's Law Dictionary 421 (8th ed.2004). See, also, Loyd v. Moore, 390 S.W.2d 951, 955 (Mo.App.1965) ("imminent peril" as used in humanitarian doctrine requires peril to be "imminent, that is to say, certain, immediate and impending. A likelihood or a bare possibility of injury is not sufficient to create imminent peril"); Webster's Encyclopedic Unabridged Dictionary of the English Language, supra at 712 ("likely to occur at any moment"). We conclude that "imminent" bodily injury within the context of § 42-903(1)(b) means a certain, immediate, and real threat to one's safety which places one in immediate danger of bodily injury, that is, bodily injury is likely to occur at any moment.
We now turn to the facts to determine whether Barbara suffered abuse within the meaning of § 42-903(1)(b), specifically whether Kurt, by physical menace, placed Barbara in fear of imminent bodily injury. Barbara alleges several incidents in which Kurt sent her text messages containing letters that combine to form the word "behead." However, these text messages cannot be construed to be within the meaning of physical menace, as words alone are not a physical threat or act within the purview of the statute. Therefore, the text messages are not instances of abuse which could sustain the entry of a domestic abuse protection order within the meaning of §§ 42-903 and 42-924.
Barbara also alleges that Kurt placed a 2 by 4 in her driveway to threaten her. We assume without deciding that such allegation satisfies the meaning of "physical menace" within § 42-903(1)(b). However, even if we allow Barbara the benefit of that assumption, the record does not support a conclusion that, as a result of this incident, Barbara was placed in fear of imminent bodily injury. Barbara testified that the comment Kurt made regarding a 2 by 4 occurred 2 years prior to the incident and that she did not see anyone place the 2 by 4 in her driveway. Kurt denied placing the 2 by 4 or having anything to do with its appearance in Barbara's driveway. There is no evidence that Kurt was on or near the premises at the time Barbara noticed the 2 by 4; therefore, we cannot conclude that Barbara was placed in fear of an immediate, real threat to her safety which placed her in immediate danger of bodily injury, because bodily injury was not likely to occur at any moment. Barbara testified that she viewed this incident as a threat, but there is no evidence to support that either Kurt or the 2 by 4 was an immediate, real threat to Barbara's safety which placed her in immediate danger of bodily injury. As such, this incident is not an instance of abuse which could sustain the entry of a domestic abuse protection order within the meaning of §§ 42-903 and 42-924.
With regard to the allegations regarding animal abuse, we likewise conclude that the record is insufficient to support that this is an instance of abuse.
*667 We note that in 1998, the Legislature enacted 1998 Neb. Laws, L.B. 218, which created a cause of action for a harassment protection order pursuant to Neb.Rev.Stat. § 28-311.09 (Cum.Supp.1998) separate from a cause of action for a domestic abuse protection order pursuant to § 42-924 (Reissue 1998). Prior to the enactment of L.B. 218, §§ 42-903 and 42-924 included language which provided a means by which a victim of stalking, harassment, or domestic abuse could file a petition for a protection order. See, § 42-903 (Cum.Supp. 1996); § 42-924 (Supp.1997). L.B. 218 essentially transferred the language relating to stalking and harassment from §§ 42-903 and 42-924 to §§ 28-311.02 and 28-311.09. See, § 42-903 (Reissue 1998); § 42-924 (Reissue 1998); § 28-311.02 (Cum.Supp.1998); § 28-311.09 (Cum.Supp. 1998). Some states' statutes which provide a cause of action for obtaining a protection order include more expansive language similar to that which was contained in §§ 42-903 and 42-924 prior to L.B. 218. See, 750 Ill. Comp. Stat. Ann. 60/203(a) (LexisNexis 2009) (petition for order of protection shall allege that petitioner has been abused by respondent); 750 Ill. Comp. Stat. Ann. 60/103(1) (LexisNexis 2009) ("[a]buse" means physical abuse, harassment, intimidation of dependent, interference with personal liberty or willful deprivation). We note that under § 28-311.09(1) (Reissue 2008) (formerly § 42-924(1)), a victim who has been harassed as defined by § 28-311.02 (Reissue 2008), may seek a harassment protection order. Section 28-311.02 defines "harass" as "to engage in a knowing and willful course of conduct directed at a specific person which seriously terrifies, threatens, or intimidates the person and which serves no legitimate purpose." We do not speculate, however, as to the result in the instant case if Barbara had pursued a harassment protection order pursuant to § 28-311.09 instead of a domestic abuse protection order pursuant to § 42-924 (Reissue 2008). Rather, we point out this legislative history only to indicate that we are bound by the language contained in the specific statutes under which Barbara sought a protection order.
In our de novo review, we find that the facts Barbara alleged in the present case do not constitute abuse within the contemplation of § 42-903 (Reissue 2008). As such, the record does not support the district court's entry of a protection order pursuant to § 42-924. Accordingly, we conclude that the district court's order affirming the domestic abuse protection order should be reversed, and we direct the district court to enter an order dismissing the domestic abuse protection order against Kurt.

CONCLUSION
For the aforementioned reasons we reverse, and remand with directions to vacate the protection order against Kurt and dismiss the action.
REVERSED AND REMANDED WITH DIRECTIONS.