- 471 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
SARAH K. v. JONATHAN K.
Cite as 23 Neb. App. 471

Sarah K., appellee, v.
Jonathan K., appellant.

Sarah K., on behalf of Tegan K.,
a minor child, appellee, v.
Jonathan K., appellant.

___ N.W.2d ___

Filed December 22, 2015.    Nos. A-15-150, A-15-152.

1. **Injunction: Judgments: Appeal and Error.** A protection order pursuant to Neb. Rev. Stat. § 42-924 (Cum. Supp. 2014) is analogous to an injunction. Thus, the grant or denial of a protection order is reviewed de novo on the record. In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

2. **Pleadings: Affidavits: Time.** Neither Neb. Rev. Stat. § 42-903(1)(a) (Cum. Supp. 2014) nor Neb. Rev. Stat. § 42-924(1) (Cum. Supp. 2014) imposes any limitation on the time during which a victim of domestic abuse resulting in bodily injury can file a petition and affidavit seeking a protection order. However, this does not mean that the remoteness of the abuse is irrelevant to the issue of whether a protection order is warranted.

3. **Judgments: Evidence: Time.** Remoteness of past abuse is a matter for a court to consider in weighing the evidence before it while deciding whether to issue a protection order.

Appeal from the District Court for Lancaster County: Thomas W. Fox, County Judge. Affirmed.

Matt Catlett, of Law Office of Matt Catlett, for appellant.

Steffanie J. Garner Kotik, of Kotik & McClure Law, for appellee.

Pirtle, Riedmann, and Bishop, Judges.

Bishop, Judge.

Jonathan K. appeals from orders of the district court for Lancaster County granting petitions for domestic abuse protection orders filed by his wife, Sarah K., on behalf of herself and her minor daughter, Tegan K. Jonathan's sole contention is that because the most recent abuse alleged in the petitions occurred 12 weeks prior to the filing of the petitions, it was too remote in time to support the entry of protection orders. We affirm.

## BACKGROUND

In January 2015, pursuant to Neb. Rev. Stat. § 42-924 (Cum. Supp. 2014), Sarah filed petitions and affidavits for domestic abuse protection orders against Jonathan on behalf of herself and Tegan, who was 1 year old. In Sarah's affidavit filed in her own behalf, the most recent incident of domestic abuse that she described occurred on November 6, 2014. During an argument on that date, Jonathan placed Sarah in a choke hold. Shortly afterward, when Jonathan saw Sarah taking photographs of the redness on her neck, he "tried to wrestle her phone away" and again placed her in a choke hold. In the 12 weeks following the incident, Jonathan had respected a "'no contact bond'" issued in the resulting criminal case. Nevertheless, due to a 5½-year history of incidents, Sarah feared "likely further violence."

Sarah described the next most recent incident of abuse as occurring on November 2, 2014. On that date, she awoke around midnight to find Jonathan sitting on the side of the bed, urinating on the floor. He was too intoxicated to clean up the mess, so Sarah cleaned it while holding Tegan in her arms. Jonathan pulled Tegan from Sarah's arms "with enough force that if [Sarah] hadn't let her go, it really would

- 473 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
SARAH K. v. JONATHAN K.
Cite as 23 Neb. App. 471

have torqued her body/torso." Sarah "backhanded" Jonathan's shoulder, and he then "forcefully backhanded" the left side of Sarah's face.

The third most recent incident was based on photographs dated October 12, 2014, which were stored in Sarah's cell phone and showed a red mark on the back of her right hand or wrist. Although Sarah did not remember the incident that caused the mark, she believed that Jonathan had "dealt some form of blow" to her hand or wrist.

At the conclusion of her affidavit, Sarah wrote:

> [M]y increasing documentation indicates a history and pattern of recurring violence, from Fall of 2009 to the present, including damage to home (walls, doors, and possessions), harm to self ([Jonathan] will throw his body into walls, doors, has hit head on table and with drinking glass), and both violence and sexual assault towards me.

Sarah stated that she feared further violence in the absence of continued separation from Jonathan.

In Sarah's affidavit filed on Tegan's behalf, the first two incidents of alleged abuse were the same as those described in Sarah's own affidavit. Sarah indicated that Tegan witnessed Jonathan placing Sarah in a choke hold twice on November 6, 2014, and that Jonathan pulled Tegan from Sarah's arms during the incident on November 2. The third incident occurred earlier that year on March 10, when during an argument, Jonathan threw a glassful of cold water on Sarah and Tegan as they lay together in bed.

An evidentiary hearing on the petitions was scheduled for February 6, 2015. Sarah testified that the allegations in the petitions and affidavits were true and correct. The court admitted the petitions and affidavits into evidence and asked Jonathan if he had any questions of Sarah. At that point, Jonathan requested a continuance to obtain counsel, and the court continued the hearing to February 20.

- 474 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
SARAH K. v. JONATHAN K.
Cite as 23 Neb. App. 471

At the February 20, 2015, hearing, Jonathan appeared with counsel. On cross-examination, Sarah testified that she did not have any contact with Jonathan between the incident on November 6, 2014, and the filing of the petitions in January 2015. She further testified that she initiated the protection order proceedings after she learned the criminal charges against Jonathan arising out of the November 6, 2014, incident would be dismissed and he would no longer be subject to a no contact order in the criminal case. She acknowledged that neither she nor Tegan was "in imminent bodily danger" from Jonathan on the date she filed the petitions.

Jonathan testified that during the incident on November 6, 2014, Sarah struck him first and Tegan was not in the room. Regarding the November 2 incident, Jonathan testified that Sarah might have been drinking as well. Jonathan did not recall the October 12 incident but testified that because Sarah had struck him "multiple times in the past," the red mark could have resulted from Jonathan protecting himself. Jonathan further testified that he had no contact with Sarah or Tegan between the November 6 incident and the date the petitions were filed. He explained that as a condition of bond in the criminal case arising out of the November 6 incident, he was prohibited from having contact with Sarah. Jonathan testified that the criminal case had been "dismissed fully" upon his entry into a diversion program.

At the close of the evidence, Jonathan's counsel argued that based on *Ditmars v. Ditmars*, 18 Neb. App. 568, 788 N.W.2d 817 (2010), the allegations of abuse in Sarah's petitions were too remote in time to support entry of protection orders.

On February 20, 2015, following the hearing, the court entered domestic abuse protection orders against Jonathan in favor of Sarah and Tegan. The form orders enjoined Jonathan for a period of 1 year from imposing any restraint upon the person or liberty of Sarah or Tegan or threatening, assaulting, molesting, attacking, or otherwise disturbing the peace of

- 475 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
SARAH K. v. JONATHAN K.
Cite as 23 Neb. App. 471

Sarah or Tegan. Jonathan was also ordered to stay away from Sarah's residence and Tegan's daycare.

Jonathan timely appealed the protection orders to this court. After briefing was completed, this court on its own motion consolidated the appeals for disposition.

## ASSIGNMENTS OF ERROR

In each appeal, Jonathan assigns that the district court erred in granting a petition for a domestic abuse protection order, based on insufficient evidence.

## STANDARD OF REVIEW

[1] A protection order pursuant to § 42-924 is analogous to an injunction. *Torres v. Morales*, 287 Neb. 587, 843 N.W.2d 805 (2014). Thus, the grant or denial of a protection order is reviewed de novo on the record. *Id*. In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. *Id*. However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

## ANALYSIS

Section 42-924(1) of the Protection from Domestic Abuse Act permits "[a]ny victim of domestic abuse" to file a petition and affidavit for a protection order. The act defines "abuse" in pertinent part as

> the occurrence of one or more of the following acts between household members:
>
> (a) Attempting to cause or intentionally and know-ingly causing bodily injury with or without a dangerous instrument;
>
> (b) Placing, by means of credible threat, another person in fear of bodily injury. . . ; or
>
> (c) Engaging in sexual contact or sexual penetration without consent as defined in section 28-318.

- 476 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
SARAH K. v. JONATHAN K.
Cite as 23 Neb. App. 471

Neb. Rev. Stat. § 42-903(1) (Cum. Supp. 2014). Upon the filing of a petition, if grounds do not exist for the issuance of an ex parte temporary protection order, a court must schedule an evidentiary hearing on the petition to be held within 14 days and cause notice of the hearing to be given to the petitioner and respondent. Neb. Rev. Stat. § 42-925(2) (Cum. Supp. 2014). A protection order issued pursuant to § 42-924 remains in effect for a period of 1 year unless dismissed or modified by the court prior to that date. § 42-925(4).

For a protection order to be entered under these statutes, Sarah was required to prove that she and Tegan were the victims of domestic abuse in that Jonathan had attempted to cause or had intentionally and knowingly caused bodily injury with or without a dangerous instrument. §§ 42-903(1)(a) and 42-924(1). Jonathan does not dispute that Sarah made such a showing in that she proved that he (1) twice placed Sarah in a choke hold; (2) "forcefully backhanded" Sarah's face; (3) pulled Tegan from Sarah's arms "with enough force that if [Sarah] hadn't let her go, it really would have torqued her body/torso"; and (4) threw a glassful of cold water on Sarah and Tegan as they lay in bed.

However, Jonathan suggests that "a showing of abuse is not enough — the petitioner must still be reasonably prompt in seeking the protection order." Reply brief for appellant in case No. A-15-150 at 2. Jonathan acknowledges that "the legislature has imposed no specific time limitation with respect to the filing of a petition for a domestic abuse protection order." Brief for appellant in case No. A-15-150 at 8. But Jonathan argues "there is unquestionably *some* limitation." *Id*. (emphasis in original). Jonathan's sole argument on appeal is that the allegations of abuse in Sarah's petitions and affidavits were too remote in time to support the entry of protection orders against him. As he did before the trial court, Jonathan relies on *Ditmars v. Ditmars*, 18 Neb. App. 568, 788 N.W.2d 817 (2010), to support his position.

In *Ditmars*, Elena Ditmars filed petitions for domestic abuse protection orders against her husband, Chalmer Ditmars, in her own behalf and on behalf of her minor son. The allegations of abuse in Elena's petitions and affidavits, which were filed in the district court for Lancaster County in November 2009, were that in September 2009 in rural Kansas, Chalmer had insisted that Elena have sex with him on a daily basis. Elena further alleged that in April 2009 in Kansas, Chalmer became angry, because she would not have sex with him, and stood outside pretending to fire a gun at the house and laughing "'like he was crazy.'" *Id*. at 570, 788 N.W.2d at 819. At a hearing on the petition, the evidence showed that Elena had moved to Nebraska with her son at the end of September 2009 and that Chalmer and Elena had not seen each other since then. Chalmer had also filed for divorce.

After the district court entered protection orders against Chalmer, he appealed to this court, and the orders were reversed. Notably, we began our analysis in *Ditmars* by noting that the definitions of abuse contained in subsections (a) and (c) of § 42-903(1) (Reissue 2008) were not at issue. We stated that we would limit our consideration to whether Elena proved abuse under § 42-903(1)(b), which at the time defined abuse as "[p]lacing, by physical menace, another person in fear of imminent bodily injury . . . ." Thus, the question before this court at that time was whether Elena had shown that Chalmer, by physical menace, had placed her or her son in fear of imminent bodily injury. *Ditmars, supra*.

In *Ditmars*, we explained that in *Cloeter v. Cloeter*, 17 Neb. App. 741, 770 N.W.2d 660 (2009), we had recently concluded that imminent bodily injury in the context of the Protection from Domestic Abuse Act meant an immediate, real threat to one's safety that places one in immediate danger of bodily injury, that is, bodily injury that is likely to occur at any moment. We then stated, "Assuming without deciding that Elena's allegations rise to the level of abuse contemplated by the [a]ct, we determine that the incidents alleged by Elena

- 478 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
SARAH K. v. JONATHAN K.
Cite as 23 Neb. App. 471

are too remote in time to support entry of a protection order." *Ditmars*, 18 Neb. App. at 572, 788 N.W.2d at 821. We noted that the alleged abuse included incidents that occurred months prior to Elena's filing of the petitions and that Elena and her son had moved from Chalmer's home at the end of September 2009, ceasing contact with Chalmer at that point. We held that "the record does not support a conclusion that Elena was placed in fear of imminent bodily injury." *Id*. at 573, 788 N.W.2d at 821. Summarizing our holding, we stated that "the facts upon which the protective orders rest are stale, and as a result, the proof of fear of an imminent bodily injury [was] insufficient." *Id*.

Jonathan contends that *Ditmars v. Ditmars*, 18 Neb. App. 568, 788 N.W.2d 817 (2010), requires reversal of the protection orders against him because in *Ditmars*, this court "assumed" there was abuse and decided the case based on the remoteness in time between the abuse and the filing of the petition seeking a protection order. Reply brief for appellant in case No. A-15-150 at 2 (emphasis omitted). Jonathan argues that Sarah waited "twice" as long as Elena to seek protection orders, brief for appellant in case No. A-15-150 at 8, and that *Ditmars* "stands for the non-controversial proposition that a person seeking a domestic abuse protection order must be reasonably prompt in doing so," reply brief for appellant in case No. A-15-150 at 3. Jonathan argues that, similar to the facts of *Ditmars*, Sarah and Tegan had no contact with Jonathan between the most recent alleged abuse and the filing of Sarah's petitions. Jonathan also urges that the protection orders should be reversed because Sarah admitted that she and Tegan were not "in imminent bodily danger" on the date the petitions were filed, just as Elena was not in imminent danger once she moved to Nebraska.

*Ditmars* does not compel us to reverse the protection orders in this case, for two reasons. First, in *Ditmars*, we limited our discussion to the definition of abuse contained in § 42-903(1)(b), which at the time defined abuse as "[p]lacing,

- 479 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
SARAH K. v. JONATHAN K.
Cite as 23 Neb. App. 471

by physical menace, another person in fear of imminent bodily injury . . . ." In the instant case, the evidence revealed past instances of actual physical abuse, which implicated the definition of abuse contained in § 42-903(1)(a) (Cum. Supp. 2014), which defines abuse as "[a]ttempting to cause or intentionally and knowingly causing bodily injury with or without a dangerous instrument." While Elena, the petitioner in *Ditmars*, was required to establish a fear of "imminent bodily injury" based on the law at that time, § 42-903(1)(b) (Reissue 2008), in the instant case, Sarah was not required to make any such showing. We reject Jonathan's contention that *Ditmars*' discussion of imminent bodily injury and the remoteness of abuse under § 42-903(1)(b) applies to all domestic abuse protection order cases, regardless of which definition of abuse is involved.

The second reason that *Ditmars* does not compel reversal of the protection orders is that 2 years after *Ditmars* was decided, the Nebraska Legislature amended the definition of abuse contained in § 42-903(1)(b). As noted above, at the time of *Ditmars*, § 42-903(1)(b) defined abuse as "[p]lacing, by physical menace, another person in fear of imminent bodily injury . . . ." In 2012, the statute was amended, in relevant part, to say that abuse means "[p]lacing, by means of credible threat, another person in fear of bodily injury." See § 42-903(1)(b) (Cum. Supp. 2014). The Legislature had removed from the definition the requirement that the alleged abuse victim fear "imminent" bodily injury, which requirement weighed heavily in this court's analysis in *Ditmars*. The 2012 legislative amendments render the continuing precedential value of *Ditmars* questionable, particularly with regard to any discussion therein about "imminent" bodily injury. See *Linda N. v. William N.*, 289 Neb. 607, 856 N.W.2d 436 (2014) (explaining statutory amendment and legislative intent behind it).

[2,3] Other than *Ditmars v. Ditmars*, 18 Neb. App. 568, 788 N.W.2d 817 (2010), Jonathan cites no Nebraska case reversing

- 480 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
SARAH K. v. JONATHAN K.
Cite as 23 Neb. App. 471

a domestic abuse protection order based solely on the remoteness of the alleged abuse, and our research has uncovered none. We note that neither § 42-903(1)(a) nor § 42-924(1) imposes any limitation on the time during which a victim of domestic abuse resulting in bodily injury can file a petition and affidavit seeking a protection order. However, this does not mean that the remoteness of the abuse is irrelevant to the issue of whether a protection order is warranted. See *Steckler v. Steckler*, 492 N.W.2d 76, 81 (N.D. 1992) ("[t]he remoteness of the [past abuse] incident is a matter for the court to consider in weighing the evidence before it").

We agree that remoteness of past abuse may be considered by the court, and we appreciate Jonathan's concern that a remote incident of abuse may not always support the issuance of a domestic abuse protection order. However, based on the evidence produced in this case, we cannot conclude that the abuse alleged was too remote in time to support entry of the protection orders. See *Coburn v. Coburn*, 342 Md. 244, 258, 674 A.2d 951, 958 (1996) ("[d]ifferent remedies are required when there has been an isolated act of abuse that is unlikely to recur, as compared to an egregious act of abuse preceded by a pattern of abuse"). Significantly, Sarah testified that she filed the petitions because the no contact order in Jonathan's criminal case resulting from the November 6, 2014, incident was expiring. During the 12-week period between the November 6 incident and the filing of the petitions, Sarah had the protection of the no contact order, which successfully kept Jonathan separated from Sarah and Tegan for that period. Although nothing prevented Sarah from seeking protection orders sooner, her delay in seeking the orders was not arbitrary or unreasonable under the circumstances, and it did not render the incidents of abuse too remote to justify entry of the orders.

Furthermore, while Sarah testified that she did not feel that she and Tegan were in "imminent bodily danger" from Jonathan on the date she filed the petitions, as previously

- 481 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
SARAH K. v. JONATHAN K.
Cite as 23 Neb. App. 471

discussed, neither § 42-903(1)(a) nor § 42-903(1)(b) in its current form required Sarah to make such a showing. Additionally, the most recent incidents of abuse also must be viewed in light of Sarah's uncontested allegation that they were part of a history and pattern of abuse dating back 5½ years to the fall of 2009. Sarah stated in her affidavit that given the history of abuse, she feared further violence in the absence of continued separation from Jonathan. Thus, while Sarah testified that she and Tegan were not in "imminent bodily danger" from Jonathan, Sarah nevertheless had a present fear of future abuse by Jonathan if he were allowed to have contact with her and Tegan.

Based on our de novo review of the record, we conclude that the district court did not err in entering protection orders against Jonathan.

## CONCLUSION

For the foregoing reasons, we affirm the protection orders issued by the district court for Lancaster County.

AFFIRMED.