IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

MALONE V. DAVIS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

CRISTIN MALONE, APPELLEE,

V.

GREGORY DAVIS, APPELLANT.

Filed September 17, 2024.    No. A-23-894.

Appeal from the District Court for Douglas County: MARCENA M. HENDRIX, Judge. Affirmed.

William G. Deck, of Deck & Deck, L.L.P., for appellant.

No brief for appellee.

MOORE, RIEDMANN, and BISHOP, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

Gregory Davis appeals the order of the district court of Douglas County granting a protection order against him for 1 year. Davis challenges the trial court's reliance on an affidavit at the show cause hearing, its determination that there was sufficient evidence to find he had abused his child, B.D., and its refusal to grant Davis a new trial. Following our review of the record, we affirm the trial court's order.

## II. BACKGROUND

Davis and Cristin Malone are the biological parents of B.D., who was born in 2014. When B.D. was 3 years old, the state of Iowa granted Davis physical custody. B.D. continued to reside in Iowa with Davis and B.D.'s half-brother, of whom Davis also had primary custody, until approximately September 2023. Malone resides in Omaha, Nebraska.

- 1 -

On August 23, 2023, Davis called Malone and told her that B.D. was being taken to the hospital by ambulance because he was having trouble breathing and speaking and he was unable to see. Hospital records reflect that B.D.'s symptoms were the result of a panic attack, which the child suffered after Davis had "spanked" B.D. as punishment for failing to properly clean his bedroom.

According to Malone's affidavit in support of her domestic abuse protection order, around September 10, 2023, B.D. told Malone an alternative version of events. B.D. allegedly informed Malone that Davis "spanked him repetively [sic] 'way more than 3 times.' Pulled him off the ground by his hair and shook him like a rag doll." Subsequently, Malone filed for a protection order on September 11, naming herself and B.D. as the protected parties and Davis as the respondent. The court did not enter an ex parte protection order but set a show cause hearing for September 28.

Concomitantly, in response to a report made on September 10, 2023, Iowa Child Protective Services (CPS) conducted a child abuse investigation. When the case worker interviewed B.D. on September 11, he iterated the version of events alleged in Malone's affidavit. Further, B.D. reported that he felt unsafe at Davis' house because "his dad is mean" and that he felt he suffered from panic attacks because "his dad is mad."

At the show cause hearing, Malone appeared pro se. She was sworn in and testified under oath that the allegations presented in her protection order affidavit were true. She also submitted into evidence the entirety of the hospital records. Opposingly, Davis testified that the events were substantially untrue, and that he had only spanked B.D. on the bottom three times and informed the child he would lose his cellphone. Davis' counsel submitted into evidence the Iowa CPS report.

After taking the matter under advisement, the trial court granted the protection order, finding that Malone had carried her burden of proving Davis had abused B.D. by a preponderance of the evidence. Davis moved for new trial, which the court denied. Davis now appeals both orders.

## III. ASSIGNMENTS OF ERROR

Davis assigns, restated, that the trial court erred in (1) finding Malone's reliance on her affidavit to be sufficient evidence to meet her burden of proof to sustain the domestic abuse protection order, (2) finding sufficient proof that abuse occurred by a preponderance of the evidence, (3) finding, under a totality of the circumstances, that a protection order was necessary to prevent future harm when balanced against the harm caused by issuing the protection order, and (4) denying Davis' motion for a new trial.

## IV. STANDARD OF REVIEW

A protection order pursuant to Neb. Rev. Stat. § 42-924 (Supp. 2023) is analogous to an injunction. See, *Elstun v. Elstun*, 257 Neb. 820, 600 N.W.2d 835 (1999); *Hronek v. Brosnan*, 20 Neb. App. 200, 823 N.W.2d 204 (2012); *Cloeter v. Cloeter*, 17 Neb. App. 741, 770 N.W.2d 660 (2009); *Devor v. Devor*, 7 Neb. App. 549, 584 N.W.2d 670 (1998). Thus, the grant or denial of a protection order is reviewed de novo on the record. *Torres v. Morales*, 287 Neb. 587, 843 N.W.2d 805 (2014). In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. *Id*. However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that

the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

An appellate court reviews a trial court's dismissal of a motion for new trial for abuse of discretion. *Clemens v. Emme*, 316 Neb. 777, 7 N.W.3d 166 (2024). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Schmid v. Simmons*, 311 Neb. 48, 970 N.W.2d 735 (2022).

## V. ANALYSIS

### 1. PROTECTION ORDER

### (a) Court Did Not Rely on Affidavit Alone

Davis argues Malone's affidavit alone was insufficient to grant the protection order because it was sworn by a non-witness and was generally unreliable. However, the trial court did not rely solely on Malone's affidavit to issue the protection order.

A show cause hearing in protection order proceedings is a contested factual hearing, in which the issue before the court is whether the facts stated in the sworn application are true. See *Mahmood v. Mahmud*, 279 Neb. 390, 778 N.W.2d 426 (2010). See, also, *Hronek v. Brosnan*, 20 Neb. App. 200, 823 N.W.2d 204 (2012). In such proceedings, where credibility of evidence is in conflict on a material issue, an appellate court will defer to the trial court's judgment of the evidence. *Coffey v. Coffey*, 11 Neb. App. 788, 661 N.W.2d 327 (2003).

Malone's affidavit alleged that she had received a call from Davis in which he told her that B.D. was on his way to the hospital in an ambulance because the boy was seizing, not breathing well, and could not speak. Malone claimed Davis told her during this phone call that he had spanked B.D. three times. Malone's affidavit further alleged that when she got the chance to speak with B.D., he told her that Davis had spanked him repeatedly, "way more than three times," and that Davis had lifted the boy off the ground by his hair and shook him "like a rag doll."

At the show cause hearing, Malone was sworn in and testified under oath that the contents of the affidavit were true. Thereafter, Davis' counsel offered into evidence the report from Iowa CPS. Within the report, the case worker assigned to B.D.'s case set forth the details of her investigation. B.D. stated to the case worker that Davis had pulled his hair and picked him up by the ears and shook him. Although Davis introduced the evidence that corroborated Malone's affidavit with B.D.'s statements, such evidence was properly considered to support Malone's affidavit. See *Anderson v. Babbe*, 304 Neb. 186, 933 N.W.2d 813 (2019) (plaintiff has right to have submission of his or her case determined from all evidence regardless of who introduces it).

Although CPS determined the complaint was "not confirmed," the case worker spoke with B.D. and he corroborated the abuse alleged in Malone's affidavit. In its determination to issue the protection order, the trial court implicitly determined that B.D.'s statements contained in the CPS report were more credible and persuasive than conflicting evidence, and such finding will be given deference on appeal. See *Coffey, supra.*

Furthermore, Malone offered the full medical records from the August 28, 2023, hospital visit. The medical records indicated that B.D.'s symptoms were most likely a stress response. Similarly, the CPS report relayed that B.D. did not feel safe at Davis' house and had panic attacks

previously because of Davis being angry with him. Consequently, the medical and CPS reports tend to corroborate the allegations of Malone's affidavit relating to the cause of B.D.'s hospital visit.

Contrary to Davis' argument, the court did not issue the protection order solely on the affidavit, but also considered additional corroborating evidence. Thus, the trial court did not err in finding the evidence was sufficient to issue the protection order.

(b) District Court's Application of Law

*(i) Sufficient Evidence of Abuse*

Davis argues that there was insufficient evidence to find that abuse had occurred by a preponderance of the evidence. Based on the evidence set forth above, we reject this argument.

Under the Protection from Domestic Abuse Act (the Act), Neb. Rev. Stat. § 42-901 et seq. (Reissue 2016, Cum. Supp. 2022, and Supp. 2023), any victim of domestic abuse may seek a domestic abuse protection order. § 42-924. The petitioner of a domestic abuse protection order must establish abuse by preponderance of the evidence. See *Maria A. on behalf of Leslie G. v. Oscar G.*, 301 Neb. 673, 919 N.W.2d 841 (2018). Absent abuse as defined by § 42-903, a protection order may not remain in effect. § 42-924. *Maria A. on behalf of Leslie G., supra.* See, also, *Linda N. v. William N.*, 289 Neb. 607, 856 N.W.2d 436 (2014).

For purposes of the Act, "[a]buse" is defined by § 42-903(1) as the occurrence of one or more of the following acts "between family or household members":

(a) Attempting to cause or intentionally and knowingly causing bodily injury with or without a dangerous instrument;

(b) Placing, by means of credible threat, another person in fear of bodily injury . . . [including] a threat implied by a pattern of conduct or a combination of verbal, written, or electronically communicated statements and conduct that is made by a person with the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety . . . or

(c) Engaging in sexual contact or sexual penetration without consent as defined in section 28-318.

Family or household members include former spouses, children, and persons who have a child in common. § 42-903(3). See *Robert M. on behalf of Bella O. v. Danielle O.*, 303 Neb. 268, 928 N.W.2d 407 (2019).

Here, Davis claimed at the show cause hearing that he merely spanked B.D. with his bare hand as punishment. However, as explained above, Malone's affidavit and the CPS report support the allegations that Davis had pulled B.D.'s hair, picked him up by his ears and shook him, and repeatedly spanked him, causing a panic attack. Further, B.D. told the case worker that he had suffered panic attacks before because he feared Davis' anger, showing a pattern of abusive behavior. The trial court did not err when it granted the protection order because evidence contained in the affidavit and reports was sufficient to sustain Malone's burden of proof that abuse had occurred.

*(ii) Evidence of Future Harm*

Davis argues the trial court erred in finding that, under a totality of the circumstances, a protection order was necessary to prevent future harm when balanced against the harm caused by issuing the protection order. Given B.D.'s statements, we reject this argument.

Because the goal of protection orders is preventing future harm, the court may consider factors pertinent to the likelihood of future harm, including the remoteness, severity, nature, and frequency of past abuse; past or pending credible threats of harm; the psychological impact of domestic abuse; the potential impact on the parent-child relationship; and the nuances of household relationships. *Rachel C. on behalf of Clayton R. v. Amos R.*, 32 Neb. App. 473, 1 N.W.3d 528 (2023) (citing *Maria A. on behalf of Leslie G., supra*). Different remedies are required when there has been an isolated act of abuse that is unlikely to recur, as compared to an egregious act of abuse preceded by a pattern of abuse. *Rachel C. on behalf of Clayton R., supra* (citing *Sarah K. v. Jonathan K.*, 23 Neb. App. 471, 873 N.W.2d 428 (2015)).

In *Maria A. on behalf of Leslie G., supra*, a father was subject to an ex parte domestic abuse protection order after he hit his daughter on the leg multiple times in an aggressive manner. At the show cause hearing, evidence showed the father was regularly involved in his daughter's caretaking, there was no significant physical injury resulting from the hitting, and testimony by the daughter's sister showed he did not regularly engage in such punishment methods and that neither daughter was afraid of him other than on the day of the incident. *Id.* Additionally, the parties stipulated the victim-daughter did not fear future harm. *Id.* The Nebraska Supreme Court reasoned that the harm caused by the protection order and the impact of the separation of the daughter and father on the parent-child relationship outweighed the risk of future harm. *Id.* Thus, the Court upheld the trial court's decision to rescind the ex parte protection order. *Id.*

The case at hand is distinguishable. Even though Davis has been B.D.'s primary caretaker and B.D. did not suffer physical injury as result of the abuse, B.D. suffered a panic attack severe enough for Davis to think the child was having a stroke. Unlike *Maria A. on behalf of Leslie G., supra*, B.D. told the case worker this panic attack was brought on by fear of Davis' anger, and that this was not the first panic attack he had suffered for this reason. B.D.'s statements to CPS indicated he was generally fearful of Davis and that Davis' actions were part of a larger pattern. Also differing from *Maria A. on behalf of Leslie G., supra,* B.D. told the case worker he does not want to be reunited with Davis because he feels unsafe at his home. Moreover, the case worker explicitly stated in her report that B.D. required support to be protected from future harm.

Although Davis contests the accuracy of B.D.'s statements, we give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. See *Torres v. Morales*, 287 Neb. 587, 843 N.W.2d 805 (2014). The trial court apparently found B.D.'s statements to be credible when balancing the risk of future harm with the risk of harm caused by issuing the protection order. Thus, the trial court did not err in granting the protection order because the record supports a conclusion that the risk of future harm outweighs the risk of harm that may be caused by issuing the protection order.

### 2. MOTION FOR NEW TRIAL

In support of his assignment that the trial court erred in denying his motion for new trial, the entirety of Davis' argument is as follows:

[Davis] filed a Motion for New Trial requesting that the court amend its findings and rescind the domestic abuse protection order for the reasons stated above in the previous arguments and in the Motion for New Trial, itself, which are adopted herein the court erred in not reexamining and setting aside its ruling. Considering the insufficiency of the evidence for its ruling it was a clear abuse of discretion.

Brief for appellant at 20-21. We find that Davis has failed to specifically argue this assigned error.

Nebraska courts have long held that, to be considered by an appellate court, the party asserting the alleged error must both specifically assign and specifically argue the error in the party's initial brief. See *Timothy L. Ashford, PC LLO v. Roses*, 313 Neb. 302, 984 N.W.2d 596 (2023). For the purposes of appellate briefs, the Supreme Court does not encourage incorporating by reference any content material to a party's argument and any party who incorporates by reference does so at the party's own peril. See, e.g., *State v. Garcia*, 315 Neb. 74, 994 N.W.2d 610 (2023) and *County of Lancaster v. County of Custer*, 313 Neb. 622, 985 N.W.2d 612 (2023).

An appellant is required to identify in his or her brief the factual and legal bases that support the assignments of error. *State v. $18,000*, 311 Neb. 621, 974 N.W.2d 290 (2022). An argument that does little more than to restate an assignment of error does not support the assignment, and an appellate court will not address it. *Id*.

Davis does not specifically argue this assigned error. To the extent he attempts to incorporate arguments made in other sections of his appellate brief, we have considered and rejected those arguments above. As to any other arguments contained in his motion for new trial not specifically contained in his appellate brief, we decline to address them based on a failure to specifically argue them.

## VI. CONCLUSION

For the forgoing reasons, we affirm the trial court's issuance of the domestic abuse protection order.

AFFIRMED.