Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/30/2018 08:11 AM CST

- 673 -

Nebraska Supreme Court Advance Sheets
301 Nebraska Reports
MARIA A. ON BEHALF OF LESLIE G. v. OSCAR G.
Cite as 301 Neb. 673

Maria A. on behalf of Leslie G., appellant,
v. Oscar G., Appellee.
___ N.W.2d ___

Filed November 30, 2018.    No. S-17-1133.

1. **Protection Orders: Injunction: Appeal and Error.** A protection order pursuant to Neb. Rev. Stat. § 42-924 (Reissue 2016) is analogous to an injunction. Thus, the grant or denial of a protection order is reviewed de novo on the record. In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

2. **Protection Orders.** Whether domestic abuse occurred is a threshold issue in determining whether an ex parte protection order should be affirmed; absent abuse as defined by Neb. Rev. Stat. § 42-903 (Reissue 2016), a protection order may not remain in effect.

3. ____. In considering whether to continue an ex parte domestic abuse protection order following a finding that domestic abuse has occurred, a court is not limited to considering only whether the ex parte order was proper, but may also consider a number of factors pertinent to the likelihood of future harm.

4. **Injunction: Proof.** A party seeking an injunction must establish by a preponderance of the evidence every controverted fact necessary to entitle the claimant to relief.

5. **Protection Orders: Proof.** The petitioner at a show cause hearing following an ex parte order has the burden to prove by a preponderance of the evidence the truth of the facts supporting a protection order. Once that burden is met, the burden shifts to the respondent to show cause as to why the protection order should not remain in effect.

Appeal from the District Court for Saline County: Vicky L. Johnson, Judge. Affirmed.

Sara K. Houston, of Nebraska Coalition, for appellant.

Carlos A. Monzón and David V. Chipman, of Monzón, Guerra & Associates, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ., and Hall, District Judge.

Hall, District Judge.

On behalf of her minor daughter, Leslie G., Maria A. appeals the order of the district court for Saline County that rescinded an ex parte domestic abuse protection order against Leslie's father, Oscar G. Upon our de novo review of the specific facts of this case, we cannot say that the district court, which heard and observed the witnesses as the trier of fact, erred in finding that the evidence as a whole was sufficient to show cause why the protection order should not remain in effect. We affirm.

## BACKGROUND

Maria and Oscar are the biological parents of two minor children involved in this case, Emily G. and Leslie. Maria and Oscar are not married and do not reside in the same household. Maria has "[f]ull [c]ustody" of Emily and Leslie, with Oscar exercising regular parenting time every other weekend. This appeal arises from an incident that occurred at Oscar's residence on June 4, 2017, during his parenting time with Leslie, then age 10, and Emily, then age 12. It is undisputed that on that date, Oscar hit Leslie several times on the leg with his open hand.

On July 3, 2017, Maria filed a petition and affidavit on Leslie's behalf to obtain a domestic abuse protection order against Oscar pursuant to Neb. Rev. Stat. § 42-924 (Reissue 2016). The standardized form alleged that Maria was "in fear of domestic abuse" on behalf of Leslie. Maria's petition and affidavit also provided facts to support her request for a protection order. According to Maria, on June 4, Emily called

- 675 -

Nebraska Supreme Court Advance Sheets
301 Nebraska Reports
MARIA A. ON BEHALF OF LESLIE G. v. OSCAR G.
Cite as 301 Neb. 673

her and informed her that Oscar had hit Leslie because Leslie was involved in breaking her stepbrother's electronic tablet. Maria reported that Oscar was angry and that Leslie had run into her room and locked the door to avoid being hit by Oscar. Maria stated that Oscar then broke the door with his foot and hit Leslie with his hand. Emily, who was in the room at the time, shared a video of the incident with Maria and asked her not to show anyone. Upon viewing the video, Maria said she was "shocked" by Oscar's violent actions toward Leslie. Maria reported that she feared Oscar would hit her daughters in the future with more violence or become angry that Emily had shown her the video. As a result, Maria immediately reported the incident to law enforcement. The record shows that Oscar was arrested and charged with child abuse pursuant to Neb. Rev. Stat. § 28-707 (Reissue 2016), but our record does not contain the disposition of that charge.

On the same day that Maria filed her petition and affidavit, the district court found that Maria had stated facts showing that Oscar had committed abuse as defined in Neb. Rev. Stat. § 42-903 (Reissue 2016) and that there was immediate danger of abuse before the matter could be heard on notice. Therefore, the district court entered an ex parte domestic abuse protection order, barring Oscar from any contact with Leslie. Oscar requested a hearing on the matter pursuant to Neb. Rev. Stat. § 42-925 (Reissue 2016) to show cause why the protection order should not remain in effect.

At the show cause hearing, the district court received Maria's petition and affidavit. Oscar's counsel called Maria to testify, and she confirmed the allegations. Maria further confirmed that minor children, other than Emily and Leslie, remained in Oscar's home. The district court also received the 9-second video recorded by Emily and referenced in the petition and affidavit. It shows Oscar breaking through the door, lunging at Leslie, and striking her five times with an open hand while Leslie is on a bed on her side with her legs drawn up. Emily and Leslie can be heard screaming, and Oscar can

- 676 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
301 NEBRASKA REPORTS
MARIA A. ON BEHALF OF LESLIE G. v. OSCAR G.
Cite as 301 Neb. 673

be heard yelling in a language that is not English and striking Leslie. During the encounter, Leslie's facial expression is not discernible.

When Maria testified that Emily and Leslie were in the courthouse, the district court advised the parties that they could be called as witnesses. Oscar called Emily to testify. Emily testified, questioned only by the district court in chambers and with counsel present, but outside the presence of the parents. She stated that after Leslie broke the electronic tablet, Leslie ran to the bedroom they shared and locked the door. Emily testified that Oscar screamed at Leslie to open the door and that Leslie refused. Emily testified that she could not recall whether Oscar threatened to hit someone at that point, but in an earlier interview at the Child Advocacy Center in Lincoln, Nebraska (CAC), summarized by the sheriff's report offered by Oscar and received into evidence along with the probable cause affidavit for Oscar's arrest, both Emily and Leslie stated that when Oscar was outside the door, he threatened to hit Leslie. According to Leslie, Oscar yelled, "'Open the door, then I am going to hit you.'" Emily reported that Oscar threatened to hit Leslie if she did not open the door.

At the hearing, Emily testified that Oscar next broke the door, entered the room, and hit Leslie on the leg. Emily stated that after she told Oscar to stop, he left the room and went to the kitchen to prepare food for the family. Sometime after Oscar left the room, Emily text messaged Maria and asked her to pick up her and Leslie because Emily did not want to be there anymore.

Emily testified that on the day of the incident, she "wasn't really afraid" of Oscar, but that she was afraid for Leslie because she thought that Leslie "would have gotten more in trouble." Emily explained that by "more in trouble" she meant that Leslie "could get grounded or get her stuff taken away." She testified that she was not afraid of Oscar on the day of the hearing. The district court had the following exchange with Emily at the end of her testimony:

- 677 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
301 NEBRASKA REPORTS
MARIA A. ON BEHALF OF LESLIE G. v. OSCAR G.
Cite as 301 Neb. 673

[Court:] . . . I can see you're kind of upset. Can you tell me why you're upset? Just take a big breath. Okay? All right. Can you tell me why you're upset?

[Emily:] Because I miss my dad and my brothers.

Q. Okay. I understand that. Do you think you would be safe with your dad?

A. ([Emily] nodded affirmatively.)

Q. She is nodding her head yes. Was that a yes?

A. Yes.

Leslie did not testify. However, the parties stipulated that if she had, she would have testified that "she was afraid [on] the day of [the incident], but she has also said that she is not afraid of her dad at this time." Additionally, the parties stipulated that Leslie's testimony as to the facts of the incident would have been "substantially similar" to Emily's testimony. In her interview with the CAC, Leslie reported that when Oscar asked her who had broken the electronic tablet and referred to her calling Oscar "'[s]tupid'" during a family outing to a lake the night before, she ran to her room because she was scared of being in trouble.

The probable cause affidavit stated that Leslie had no "marks or bruises of any kind." However, in her interview at the CAC the next day, Leslie reported "a little mark on her leg." Leslie also stated during that interview that Oscar had hit her in the past, but that she could not recall the circumstances. Emily stated during her CAC interview that Oscar had not previously used hitting as a consequence, but, rather, "'grounds'" them or takes items away.

According to the probable cause affidavit, on the day of the incident, Oscar admitted to law enforcement that he had hit Leslie because, in addition to breaking the electronic tablet, she had called him "'[s]tupid'" the night before. He further reported that the door to the bedroom was previously broken before he barged through it and that he did not believe he hit Leslie "too hard."

- 678 -

Nebraska Supreme Court Advance Sheets
301 Nebraska Reports
MARIA A. ON BEHALF OF LESLIE G. v. OSCAR G.
Cite as 301 Neb. 673

The district court entered an order rescinding the ex parte domestic abuse protection order pertaining to Leslie. See § 42-925. The district court stated:

    1. No evidence of bodily injury (no testimony of pain or evidence of bruising).

    2. Neb. Rev. Stat. §28-1413 (1)(a) and (b) allows a parent to use physical discipline so long as no extreme pain or serious bodily harm.

    3. The only threat was perceived to be additional discipline, such as grounding.

Maria now appeals.

## ASSIGNMENTS OF ERROR

Maria assigns, condensed and restated, (1) that based upon the evidence presented at the show cause hearing, the district court erred in rescinding the ex parte domestic abuse protection order, and (2) that the district court erred in assigning weight to Neb. Rev. Stat. § 28-1413 (Reissue 2016).

## STANDARD OF REVIEW

[1] A protection order pursuant to § 42-924 is analogous to an injunction. Thus, the grant or denial of a protection order is reviewed de novo on the record. In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Torres v. Morales*, 287 Neb. 587, 843 N.W.2d 805 (2014).

## ANALYSIS

*Issue Is Whether Ex Parte Domestic Abuse Order*
*Should Remain in Effect, and Here, District Court*
*Did Not Err in Finding That It Should Not.*

We begin our analysis by reviewing the statutes pertinent to the procedural aspects of this case. The Protection from

- 679 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
301 NEBRASKA REPORTS
MARIA A. ON BEHALF OF LESLIE G. v. OSCAR G.
Cite as 301 Neb. 673

Domestic Abuse Act, Neb. Rev. Stat. § 42-901 et seq. (Reissue 2016) (the Act), provides that a victim of domestic abuse may file a petition and affidavit for a protection order with the clerk of the district court. § 42-924. For the purposes of the Act, abuse is defined by § 42-903(1) as the occurrence of one or more of the following acts between family or household members:

> (a) Attempting to cause or intentionally and knowingly causing bodily injury with or without a dangerous instrument;

> (b) Placing, by means of credible threat, another person in fear of bodily injury. For purposes of this subdivision, credible threat means a verbal or written threat, including a threat performed through the use of an electronic communication device, or a threat implied by a pattern of conduct or a combination of verbal, written, or electronically communicated statements and conduct that is made by a person with the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her family. It is not necessary to prove that the person making the threat had the intent to actually carry out the threat. The present incarceration of the person making the threat shall not prevent the threat from being deemed a credible threat under this section; or

> (c) Engaging in sexual contact or sexual penetration without consent as defined in section 28-318.

Section 42-924(1) states that upon the filing of a petition for a protection order by any victim of domestic abuse and affidavit in support thereof, "the court may issue a protection order without bond," enjoining the respondent from varying degrees of contact with the petitioner, awarding petitioner temporary custody of any minor children, enjoining the respondent from possessing or purchasing a firearm, or "[o]rdering such other relief deemed necessary to provide for the safety and

- 680 -

Nebraska Supreme Court Advance Sheets
301 Nebraska Reports
MARIA A. ON BEHALF OF LESLIE G. v. OSCAR G.
Cite as 301 Neb. 673

welfare of the petitioner and any designated family or house-hold member."

Section 42-925(1) provides that a domestic abuse protection order under § 42-924 may be issued ex parte prior to a hearing if it reasonably appears from the specific facts included in the affidavit that the petitioner will be in immediate danger of abuse before the matter can be heard on notice. If a court issues a domestic abuse protection order ex parte:

> [S]uch order is a temporary order and the court shall forthwith cause notice of the petition and order to be given to the respondent. The court shall also cause a form to request a show-cause hearing to be served upon the respondent. . . . If the respondent appears at the hearing and shows cause why such order should not remain in effect, the court shall rescind the temporary order. If the respondent does not so appear and show cause, the temporary order shall be affirmed and shall be deemed the final protection order.

§ 42-925(1).

If grounds do not exist for issuance of an ex parte domestic abuse protection order, the court must schedule an evidentiary hearing within 14 days. § 42-925(2). If the respondent does not appear and show cause why the protection order should not be issued, the court shall issue a final protection order. *Id.*

Here, Maria appeals from the order of the district court that rescinded an ex parte domestic abuse protection order following a show cause hearing requested by Oscar pursuant to § 42-925(1). Maria's appellate brief focuses mainly on whether Oscar committed abuse as defined by § 42-903. She argues that if such abuse occurred, the district court erred in rescinding the ex parte protection order. However, as we will explain, based on the procedural framework of this case and the above-quoted statutory language, the inquiry before the district court was whether the ex parte order ought to have remained in effect once it was in place. See § 42-925(1). In addressing this question, the district court was not guided exclusively by the

- 681 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
301 NEBRASKA REPORTS
MARIA A. ON BEHALF OF LESLIE G. v. OSCAR G.
Cite as 301 Neb. 673

definition of abuse in § 42-903, as Maria's brief implies, or by whether the ex parte order was permissible at its inception. Instead, the district court could also consider other factors in its determination as to whether the ex parte order should remain in effect to prevent future harm.

[2] As noted above, § 42-925(1) provides, "If the respondent appears at the hearing and shows cause why such [ex parte] order *should not remain in effect*, the court shall rescind the temporary order. If the respondent does not so appear and show cause, the temporary order shall be affirmed . . . ." (Emphasis supplied.) Whether domestic abuse occurred is a threshold issue in determining whether an ex parte protection order should be affirmed; absent abuse as defined by § 42-903, a protection order may not remain in effect. See §§ 42-903, 42-924, and 42-925. See, also, *Linda N. on behalf of Rebecca N. v. William N.*, 289 Neb. 607, 856 N.W.2d 436 (2014) (reversing order that affirmed ex parte domestic abuse protection order where respondent's conduct did not meet definition of abuse under § 42-903). But even when domestic abuse as defined by § 42-903 has occurred, the language of § 42-925(1) suggests a wider inquiry in deciding whether to affirm or rescind an ex parte protection order. Section 42-925(1) frames the issue as whether the protection order should remain in effect and thus orients the court's view toward the future and the goal of domestic abuse protection orders, which is to protect victims of domestic abuse from further harm. See Introducer's Statement of Intent, L.B. 310, Judiciary Committee, 102d Leg., 1st Sess. (Jan. 26, 2011). See, also, 25 Am. Jur. 2d *Domestic Abuse and Violence* § 31 (2014).

[3] Therefore, in considering whether to continue an ex parte domestic abuse protection order following a finding that domestic abuse has occurred, a court is not limited to considering only whether the ex parte order was proper, but may also consider a number of factors pertinent to the likelihood of future harm. Those factors might include, but are not limited to, the remoteness, severity, nature, and frequency of

- 682 -

Nebraska Supreme Court Advance Sheets
301 Nebraska Reports
MARIA A. ON BEHALF OF LESLIE G. v. OSCAR G.
Cite as 301 Neb. 673

past abuse; past or pending credible threats of harm; the psychological impact of domestic abuse; the potential impact on the parent-child relationship; and the nuances of household relationships.

The principles governing injunctions support this prospective, or forward-looking, approach. Our jurisprudence has consistently analogized domestic abuse protection orders to injunctions. See, e.g., *Linda N. on behalf of Rebecca N. v. William N., supra*; *Torres v. Morales*, 287 Neb. 587, 843 N.W.2d 805 (2014); *Elstun v. Elstun*, 257 Neb. 820, 600 N.W.2d 835 (1999). An injunction is a tool of equity, to be implemented on a case-by-case basis as justice and fairness require. See *ConAgra Foods v. Zimmerman*, 288 Neb. 81, 846 N.W.2d 223 (2014). This court has described an injunction as "'an extraordinary remedial process which is granted, not as a matter of right, but in the exercise of the sound discretion of the court, to be determined on a consideration of all the circumstances of each case . . . .'" *Daugherty v. Ashton Feed and Grain Co., Inc.*, 208 Neb. 159, 164, 303 N.W.2d 64, 68 (1981). The purpose of an injunction is not to punish past actions but to prevent future mischief. See, *Nesbitt v. Frakes*, 300 Neb. 1, 911 N.W.2d 598 (2018); *Conrad v. Kaup*, 137 Neb. 900, 291 N.W. 687 (1940). And a court has the discretion to withhold injunctive relief "when it is likely to inflict greater injury than the grievance complained of." *City of Omaha v. Rubin*, 177 Neb. 314, 318, 128 N.W.2d 814, 816 (1964).

A prospective approach in deciding whether to rescind ex parte domestic abuse protection orders is also consistent with other provisions of the Act. The language of § 42-924 does not limit the court to considering only whether abuse has occurred in deciding whether to issue a protection order. Section 42-924(1) provides that upon the filing of a petition and affidavit for a protection order by a victim of domestic abuse, the court "*may* issue a protection order." (Emphasis supplied.) Giving the word "may" its ordinary, permissive, and

- 683 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
301 NEBRASKA REPORTS
MARIA A. ON BEHALF OF LESLIE G. v. OSCAR G.
Cite as 301 Neb. 673

discretionary meaning, see *Livingston v. Metro. Utilities Dist.*, 269 Neb. 301, 692 N.W.2d 475 (2005), the court's analysis can be more expansive than finding that abuse occurred pursuant to § 42-903. The Nebraska Court of Appeals acknowledged this wider analysis in *Sarah K. v. Jonathan K.*, 23 Neb. App. 471, 873 N.W.2d 428 (2015).

In *Sarah K. v. Jonathan K., supra*, the Court of Appeals affirmed an order granting domestic abuse protection orders pursuant to § 42-924, even though the instances of alleged abuse were remote in time. It noted that neither § 42-903(1)(a) nor § 42-924(1) imposes any limitation on the time during which a victim of domestic abuse may file a petition and affidavit seeking a protection order. However, the Court of Appeals acknowledged that the remoteness of past abuse may be considered by the court in deciding whether a protection order is warranted and that a remote incident of abuse may not always support the issuance of a domestic abuse protection order. It further cited authority that "'[d]ifferent remedies are required when there has been an isolated act of abuse that is unlikely to recur, as compared to an egregious act of abuse preceded by a pattern of abuse.'" *Id*. at 480, 873 N.W.2d at 434, quoting *Coburn v. Coburn*, 342 Md. 244, 674 A.2d 951 (1996). In concluding that the protection orders in *Sarah K. v. Jonathan K., supra*, were warranted despite the remoteness of the abuse, the Court of Appeals reasoned that the petitioner had a present fear of future abuse due to the history and pattern of past abuse. As *Sarah K. v. Jonathan K.* illustrates, the approach we have described for deciding whether an ex parte domestic abuse protection order should remain in effect is in harmony with the provisions for non-ex-parte protection orders issued under § 42-924.

In addition, in the context of modification, the Act does not limit the court to considering only whether there has been abuse. Section 42-925(4) provided, "An order issued under subsection (1) of section 42-924 shall remain in effect for a period of one year from the date of issuance, unless dismissed

- 684 -

Nebraska Supreme Court Advance Sheets
301 Nebraska Reports
MARIA A. ON BEHALF OF LESLIE G. v. OSCAR G.
Cite as 301 Neb. 673

or modified by the court prior to such date." The court can only decide whether an order should be modified or dismissed by evaluating the parties' situation at the time modification or dismissal is sought. This suggests a consideration of the initial determination that abuse pursuant to § 42-903 has occurred along with facts that emerge later and show that a protection order, as originally issued, is no longer necessary. While dismissal or modification under § 42-925(4) occurs at a different procedural stage than affirming or rescinding an ex parte order pursuant to § 42-925(1), engaging in such an analysis at either stage is not meaningfully different.

Having framed the issue as whether the domestic abuse protection order should have remained in effect, we now turn to the evidence presented at the show cause hearing. It is at this point that our dissenting colleague parts ways with us: We disagree on whether the record properly before us supports the district court's order rescinding the ex parte protection order. As our discussion below explains, the majority cannot say that the district court, having heard and observed the witnesses as the trier of fact, erred in finding cause why the ex parte order should not remain in effect. But as an initial matter, we address the burdens of proof.

[4] A show cause hearing in protection order proceedings is a contested factual hearing, in which the issues before the court are whether the facts stated in the sworn application are true. See *Mahmood v. Mahmud*, 279 Neb. 390, 778 N.W.2d 426 (2010). See, also, *Hronek v. Brosnan*, 20 Neb. App. 200, 823 N.W.2d 204 (2012). As noted above, a protection order is analogous to an injunction. See *Torres v. Morales*, 287 Neb. 587, 843 N.W.2d 805 (2014). A party seeking an injunction must establish by a preponderance of the evidence every controverted fact necessary to entitle the claimant to relief. *Abboud v. Lakeview*, Inc., 237 Neb. 326, 466 N.W.2d 442 (1991). In *Mahmood v. Mahmud, supra*, we cited this authority in the context of harassment protection orders pursuant to Neb. Rev. Stat. § 28-311.09 (Reissue 2016) and stated that an

- 685 -

Nebraska Supreme Court Advance Sheets
301 Nebraska Reports
MARIA A. ON BEHALF OF LESLIE G. v. OSCAR G.
Cite as 301 Neb. 673

ex parte order does not relieve the petitioner of the burden to establish by a preponderance of the evidence the truth of the facts supporting a protection order.

[5] Given that domestic abuse protection orders are a species of injunction and given the procedural similarities between § 28-311.09 and § 42-925 as they relate to show cause hearings following ex parte orders, we now apply the burden of proof we articulated in *Mahmood v. Mahmud, supra*. Such application is in line with the analytical framework set forth above, in which the occurrence of abuse defined by § 42-903 is a threshold consideration in deciding whether to affirm or rescind an ex parte domestic abuse protection order. Accordingly, the petitioner at a show cause hearing following an ex parte order has the burden to prove by a preponderance of the evidence the truth of the facts supporting a protection order. Once that burden is met, the burden shifts to the respondent to show cause as to why the protection order should not remain in effect. § 42-925(1).

The dissenting opinion would have us overrule or disapprove our previous holdings to the extent that they suggest that the truth of the facts supporting a protection order is the only issue at a show cause hearing under § 43-925(1). However, our holding here does not change our interpretation of that section or our existing precedent. More precisely, our majority opinion speaks directly to the procedures and considerations at the show cause hearing, and our analysis does not abrogate our prior cases.

We turn now to the facts of this case, which are contained in the record to which our review is confined. See *Hulse v. Schelkopf*, 220 Neb. 617, 371 N.W.2d 673 (1985) (evidence which does not appear in record cannot be considered by this court on appeal). Assuming without deciding that Maria sustained her burden of proof, we cannot say that the district court erred in finding that Oscar met his burden of proof and showed cause why the ex parte domestic abuse protection order should not remain in effect.

The primary evidence before us for consideration relates to the events of June 4, 2017, when Oscar broke through the door to Leslie's room, entered the room, and hit her several times on the leg with his open hand. We acknowledge that the video footage of this incident is disturbing. We are not insensitive to its emotional impact, and we do not condone or intend to minimize Oscar's conduct. However, the 9-second video depicts only a piece of the larger family dynamic at play in this case. That family dynamic is fleshed out more thoroughly by the documentary and testimonial evidence, which the district court heard and observed as the trier of fact. After hearing this evidence, the district court implicitly determined that it was not necessary to keep the domestic abuse protection order in place to prevent future harm.

There was no documentary or testimonial evidence that Emily or Leslie feared for Leslie's physical safety on June 4, 2017, or in the future. On the day of the incident, Emily's concern was not for Leslie's physical well-being but for the potential loss of privileges, which was the consequence Oscar typically imposed. The parties are bound by their stipulation that Leslie was "afraid [on] the day of [the incident]." See *Shearer v. Shearer*, 270 Neb. 178, 700 N.W.2d 580 (2005). But the stipulation does not specify that Leslie feared present or future physical harm on that day. Further, according to Emily's testimony and the parties' stipulation, neither child feared Oscar at the time of the show cause hearing. To the contrary, Emily volunteered that she missed Oscar and testified that she thought she would be safe with him.

There was some evidence that Oscar may have threatened to hit Leslie before he broke through the door. Both Emily and Leslie stated during the CAC interview that Oscar threatened to hit Leslie at that point, but Emily testified at the show cause hearing that she could not remember whether Oscar made such a threat. Either way, moments after breaking through the door, Oscar hit Leslie. A protection order at the time of the show cause hearing could not have prevented that outcome,

- 687 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
301 NEBRASKA REPORTS
MARIA A. ON BEHALF OF LESLIE G. v. OSCAR G.
Cite as 301 Neb. 673

and Maria concedes that Leslie suffered no bodily injury as a result.

Further, the evidence does not show any pending threat of future harm or a pattern of abuse foreshadowing future harm. Oscar offered the probable cause affidavit and evidence of the CAC interview to demonstrate that the events on June 4, 2017, were a single incident and not part of a pattern of using physical force. In her affidavit supporting her request for a protection order, Maria herself affirmed that she was "shocked" by Oscar's actions, suggesting that he had not behaved this way in the past. While Leslie reported in the CAC interview that Oscar had hit her in the past, she could not recall the circumstances, and Emily denied that Oscar had previously used hitting as a consequence. Further, at the time of the show cause hearing, other minor children remained in Oscar's home, despite pending child abuse charges, the disposition of which is not in our record. The foregoing evidence suggests that the events of June 4 were an isolated incident not likely to recur and that a protection order was not needed to prevent future harm.

As Oscar's counsel emphasized in his closing remarks, the district court was faced with deciding whether it should enter a final protection order, which had the potential to inflict greater "lasting damage" than the conduct that prompted the ex parte order. Had the district court affirmed the ex parte protection order, Oscar would have been enjoined from contact with Leslie for 1 year, absent modification. See §§ 42-924(3)(a) and 42-925(4). As noted, while the parties stipulated that Leslie was afraid on the day of the incident, the stipulation did not specify whether she was afraid of bodily injury on that day, which Maria concedes did not occur; for her future physical safety; or of the prospect of appropriate disciplinary measures. And the parties stipulated that Leslie did not fear Oscar in any way on the day of the show cause hearing. Further, Emily's testimony indicated that they typically received appropriate consequences from Oscar, whom she

- 688 -

Nebraska Supreme Court Advance Sheets
301 Nebraska Reports
MARIA A. ON BEHALF OF LESLIE G. v. OSCAR G.
Cite as 301 Neb. 673

stated she misses and feels safe with. According to the record, Oscar had been a regular fixture in his daughters' lives, exercising parenting time for 4 days every 2 weeks at his residence, where Emily and Leslie had their own room and where Oscar played a role in their care and leisure activities. Considering this evidence, the harm occasioned by separating Leslie and Oscar potentially could have been greater than the harm caused by the isolated incident that precipitated the ex parte protection order. See *City of Omaha v. Rubin*, 177 Neb. 314, 128 N.W.2d 814 (1964) (court has discretion to withhold injunctive relief when it is likely to inflict greater injury than grievance complained of).

Although the dissenting opinion states that it subscribes to the analytical framework articulated by the majority, its reasoning seems to suggest that an ex parte protection order should never be rescinded if it was warranted at its inception. This is not correct. We recognize that in many, if not most, instances, a showing of abuse under § 42-903 is sufficient to merit the affirmation of an ex parte protection order; but as we have explained, it is not the only consideration in resolving the issue presented: whether an ex parte protection order should remain in effect to prevent future harm. We agree with the dissenting opinion that protecting victims of domestic abuse is of the utmost importance, but courts do not have license to assume future risk where the record does not support such a finding. Our dissenting colleague relies heavily on statements contained in the probable cause affidavit and suggests that these averments point to a future risk of harm. However, the dissent ignores altogether the testimony at the show cause hearing that countered such a conclusion. The district court apparently found this testimony to be credible in assessing the risk of future harm. And we give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. See *Torres v. Morales*, 287 Neb. 587, 843 N.W.2d 805 (2014).

- 689 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
301 NEBRASKA REPORTS
MARIA A. ON BEHALF OF LESLIE G. v. OSCAR G.
Cite as 301 Neb. 673

After giving due deference to the fact that the trial judge heard and observed the witnesses and relying exclusively on the record before us, we cannot say upon our de novo review of the specific facts of this case that the district court erred in finding that the evidence as a whole was sufficient to show cause why the protection order should not remain in effect. Consequently, we conclude that the district court did not err in rescinding the ex parte domestic abuse protection order. In so holding, we express no opinion on Maria's addressing Oscar's conduct through other avenues.

*We Need Not Consider Whether
District Court Erred in
Referencing § 28-1413.*

Finally, we conclude by addressing Maria's contention that the district court incorrectly relied on § 28-1413(1)(a) and (b), which provides that a parent's use of physical discipline on his or her child under certain circumstances is a justifiable use of force under the criminal code. At common law, a parent, or one standing in the relation of parent, was not liable either civilly or criminally for moderately and reasonably correcting a child, but it was otherwise if the correction was immoderate and unreasonable. See *Clasen v. Pruhs*, 69 Neb. 278, 95 N.W. 640 (1903). Section 28-1413(1)(a) is the codification of the common-law rule. We have held that § 28-1413 does not create or confer an affirmative right to use physical or corporal punishment, but, rather, only provides a defense against criminal liability. See *Cornhusker Christian Ch. Home v. Dept. of Soc. Servs.*, 227 Neb. 94, 416 N.W.2d 551 (1987). Thus, § 28-1413(1)(a) reflects the common-law policy of allowing parents some latitude in disciplining their children. However, having determined that the district court did not err in rescinding the ex parte protection order, we do not address the applicability of § 28-1413 to this case.

## CONCLUSION

For the foregoing reasons, we conclude that the district court did not err in rescinding the ex parte domestic abuse protection order against Oscar, and we affirm.

Affirmed.

Miller-Lerman, J., dissenting.

I respectfully dissent. For purposes of this dissent, although I do not necessarily subscribe to the burden-shifting framework announced by the court today, I will employ it. However, contrary to the majority opinion, given this record and our de novo review thereof, I would accord greater credence to the known observed facts which, I believe, established the propriety of the temporary order, and less credence to future imagined evidence on which the majority relies to support its determination that a protection order is not warranted. Thus, I would find that the temporary order was properly entered and, because Oscar's evidence does not show that he cares more for the well-being of his young daughter than his electronic device, to protect the child, it should not have been rescinded. I would reverse the order of the district court.

In the context of the show cause hearing from which this appeal is taken, as I see it, courts should focus on the language of Neb. Rev. Stat. § 42-925(1) (Reissue 2016), which describes the issue at the show cause hearing, i.e., whether the respondent has shown that the temporary order should be rescinded. This is not a motion to dismiss or for modification under § 42-925(4); so, contrary to the majority, I resist reliance on this inapplicable statute. Of course, Oscar can seek dismissal or modification at a future stage.

Before today's gloss, we have said that the fact issue before the court deciding whether to rescind an ex parte domestic abuse protection order at a show cause hearing is whether the plaintiff proved the truth of the facts of abuse as stated in the sworn domestic violence protection order application. *Torres v. Morales*, 287 Neb. 587, 843 N.W.2d 805 (2014); *Mahmood v.*

- 691 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
301 NEBRASKA REPORTS
MARIA A. ON BEHALF OF LESLIE G. v. OSCAR G.
Cite as 301 Neb. 673

*Mahmud*, 279 Neb. 390, 778 N.W.2d 426 (2010). To the extent that past cases suggest that the truth of the application is the *only* issue at a show cause hearing under § 42-925(1) where the respondent appears, they should be overruled or at least disapproved by the majority. *Torres v. Morales, supra*; *Mahmood v. Mahmud, supra*. See, also, *Rosberg v. Rosberg*, 25 Neb. App. 856, 916 N.W.2d 62 (2018); *Hronek v. Brosnan*, 20 Neb. App. 200, 823 N.W.2d 204 (2012); *Zuco v. Tucker*, 9 Neb. App. 155, 609 N.W.2d 59 (2000).

*Maria Showed That Oscar Abused Leslie,*
*as Defined by Statute, and the Temporary*
*Protection Order Was Properly Entered.*

For purposes of this dissent, I employ the majority's burden-shifting framework. In so doing, I would find that Maria carried her burden on the "threshold question" of whether abuse occurred as defined by Neb. Rev. Stat. § 42-903(1) (Reissue 2016), thus supporting the temporary protection order. According to both Emily and Leslie, the video of the incident, and the affidavit of Deputy John Hensel, the evidence showed that Oscar threatened to hit his 10-year-old daughter Leslie; that Oscar kicked open her bedroom door with a force so great as to destroy the door; that Oscar rushed at Leslie and hit her multiple times, enraged and screaming at her; and that Leslie hid from Oscar in her room, assumed a defensive posture, and screamed as he approached and hit her.

Deputy Hensel swore in a probable cause affidavit filed in Oscar's corresponding criminal case that the video filmed by Emily shows: "a bedroom with children in it; then the bedroom door is broken in half . . . and an adult male [Oscar] is seen running in and hitting one of the children with an open hand multiple times very aggressively while another child screams and cries in the background." Oscar's strikes are forceful, and they are audible in the video. Leslie reported to Deputy Hensel that Oscar had hit her before, but could not remember when or how it happened.

- 692 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
301 NEBRASKA REPORTS
MARIA A. ON BEHALF OF LESLIE G. v. OSCAR G.
Cite as 301 Neb. 673

The evidence established that Leslie feared for her physical safety on the day Oscar hit her. There is no evidence that Leslie did not fear Oscar; on the contrary, the parties actually stipulated that Leslie was afraid of Oscar on the day of this incident, and this is fully supported by the record.

Thus, I believe that the preponderance of the evidence at the hearing was that Oscar made a "credible threat" which placed Leslie "in fear of bodily injury," meeting the definition of abuse under § 42-903(1)(b). The temporary protection order was properly entered.

*Oscar Did Not Establish by Evidence That
There Was No Risk of Future Harm and
Therefore Failed to Show Cause Why
the Temporary Order Properly
Entered Should Be Rescinded.*

As stated above, for purposes of this dissent, I employ the burden-shifting framework announced by the majority today. In so doing, I look to the evidence presented by Oscar and jurisprudence which inform the assessment of future harm. I do not believe that Oscar demonstrated that a protection order was not needed to protect Leslie against future harm.

Under § 42-925(1), when the respondent, in this case Oscar, requests a show cause hearing, "the court shall immediately schedule a show-cause hearing." The statute continues: "If the respondent appears at the hearing and shows cause why such order should not remain in effect, the court shall rescind the temporary order." As I read the statute, there is a statutory presumption that the temporary order properly entered should be continued--and Oscar's evidence did not overcome the presumption. Of course, even if the ex parte protection order was warranted, it can be rescinded based on the evidence presented by the respondent at the show cause hearing.

Several factors are relevant in evaluating the likelihood of future harm to the subject of a protection order, such as Leslie. Those factors might include, but are not limited to, the

- 693 -

Nebraska Supreme Court Advance Sheets
301 Nebraska Reports
MARIA A. ON BEHALF OF LESLIE G. v. OSCAR G.
Cite as 301 Neb. 673

remoteness, severity, nature, and frequency of past abuse; past or pending credible threats of harm; the psychological impact of domestic abuse; and the nuances of household relationships. I note that some jurisdictions list the relevant factors statutorily. See, e.g., 725 Ill. Comp. Stat. Ann. 5/112A-14(c) (LexisNexis Cum. Supp. 2009). In these jurisdictions, the courts consider the pattern and consequences of past abuse and consider the danger that any minor child will be abused, neglected, or improperly removed from the jurisdiction or improperly separated from the child's primary caretaker. *Id*. Applying the many factors listed above, Oscar did not show by the preponderance of the evidence that the protection order should be rescinded.

The district court received only limited testimony from Emily and no testimony from Oscar or his partner and other children to "flesh out" the larger family dynamic at play in this case. I reviewed the testimony and the other limited evidence, and it does not weigh in favor of Oscar. I agree with the majority that the "family dynamic" is an important consideration. And while I agree with the majority's subtext in support of family reunification, Oscar did not necessarily establish the profile of "unity" the majority hopes to create. According to this record, Maria, Leslie's mother, has full custody of Leslie, and Oscar has parenting time every other weekend. Oscar and Maria are not married, and Oscar did not demonstrate, such as by a court order, that his parenting is formalized. In any event, the object of the current case is to protect the child.

Turning to the evidence, approximately 3 months passed between the June 4, 2017, incident captured on video and the September 11 show cause hearing; this abuse was not remote. Oscar, who carried the burden to show cause at this hearing, failed to create a record which would demonstrate that his conduct was a one-time lapse of judgment. On the contrary, the record indicates that Oscar was angry because his investment in an electronic device was lost. His unrestrained

- 694 -

Nebraska Supreme Court Advance Sheets
301 Nebraska Reports
MARIA A. ON BEHALF OF LESLIE G. v. OSCAR G.
Cite as 301 Neb. 673

reaction suggests a lack of control, not a pattern of thoughtful discipline.

In an interview with law enforcement directly following the June 4, 2017, incident, Leslie reported that Oscar had hit her in the past. In a contemporaneous interview, Leslie's sister, Emily, denied being hit by Oscar. I disagree with the majority that this limited evidence compels the conclusion that the "events . . . were an isolated incident not likely to recur." The burden was on Oscar at this stage, not on Leslie.

As noted, Leslie reported that Oscar had hit her in the past, Leslie chose to lock herself in her bedroom away from Oscar, and Emily felt she should videotape Oscar's display of rage and send it to Maria by text message. The majority minimizes the risk of harm of escalating domestic violence and ignores the possibility that its decision may subject Leslie to future abuse or a cycle of abuse despite Maria's attempt to protect her daughter. In this regard, I note that some states, by statute, recognize that domestic violence between family members may include a mother's justified fear of harm to her child by that child's father. E.g., Wash. Rev. Code Ann. § 26.50.010(3) (West 2016); *Rodriguez v. Zavala*, 188 Wash. 2d 586, 398 P.3d 1071 (2017). Oscar could have shown this was an isolated incident unlikely to recur, but he did not do so; the preponderance of the evidence is that he has placed Leslie in fear of bodily injury, and there is no evidence that he would not do so again.

This case raises serious concern about the psychological impact of domestic abuse and the future possible abuse of Leslie given the nuances of household relationships demonstrably in place here. Leslie is a 10-year-old child and did not testify at the show cause hearing. The parties stipulated that "she was afraid [on] the day of [the June 4 incident], but she has also said that she is not afraid of her dad at this time." This change in her reporting should be taken at face value and stretched no further. It is not uncommon for battered children, as well as abused partners, to recant their claims or express

- 695 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
301 NEBRASKA REPORTS
MARIA A. ON BEHALF OF LESLIE G. v. OSCAR G.
Cite as 301 Neb. 673

reluctance with proceeding against an abuser. A child's willingness to return to his or her parent does not discredit the child's original report of domestic abuse. The lack of fear at the time of the show cause hearing may even be evidence the ex parte protection order has been serving its purpose to protect the victim.

As one court noted in a case where a mother obtained a protection order against a father who disciplined a 4-year-old child with a belt and left bruises:

"[The children] were asked if they wanted to see their father. Of course they do. Children who suffer way more serious abuse still want to see their abuser. That is not uncommon. It is not their decision. The Court must decide for them. In this case, there was no testimony to allow the Court to believe the father won't do this again. He has not participated in any services. He doesn't even think he did anything wrong."

*Smith v. Murphy*, 2017 Ark. App. 188, at 10, 517 S.W.3d 453, 459 (Mar. 29, 2017).

When a child expresses reluctance to continue with legal proceedings, as with an adult petitioner, it has been observed that it is prudent for a court to question the child outside the presence of the abuser to ascertain fully whether the respondent is coercing the child victim. See Catherine F. Klein & Leslye E. Orloff, *Providing Legal Protection for Battered Women: An Analysis of State Statutes and Case Law*, 21 Hofstra L. Rev. 801 (1993). We should not automatically exclude a child from a protection order because she fails to show fear of a potential harm which she may not fully understand.

I would not discredit the child's report of abuse which initiated this ex parte protection order. See *Bacchus v. Bacchus*, 108 So. 3d 712 (Fla. App. 2013) (noting that courts should consider both circumstances giving rise to protection order and events occurring after protection order was issued). Nor should Leslie's report that Oscar had hit her in the past be discredited. A person's past conduct is important evidence in

predicting his or her future conduct. Likewise, I find it significant that Oscar faced legal culpability for his conduct in the Saline County District Court based on this incident.

I also consider events occurring after the ex parte protection order was put in place. Despite facing criminal consequences, Oscar did not admit wrongdoing in his approach to "discipline" toward Leslie. The record is also silent on whether Oscar acknowledged the psychological effect of his behavior or whether he had changed his behavior around his children to assuage their reasonable fears. Oscar reported that he hit Leslie three times, but Deputy Hensel stated in his report that the video shows him hitting Leslie five times. Oscar submitted no evidence that he participated in any services, such as therapy sessions, parenting classes, anger management classes, or any other remedial measures. See *Smith v. Murphy, supra*. He offered no evidence demonstrating a prospect for insight or change. Without evidence that the event was isolated, or evidence of Oscar's recent conduct, I cannot find that he showed that Leslie did not need protection from future harm. "'[T]here was no testimony to allow the Court to believe the father won't do this again.'" *Id*. at 10, 517 S.W.3d at 459.

The district court's decision to rescind the ex parte protection order did not rest on correct legal principles, and it is not apparent that the court took into consideration the entirety of the facts in the record. "'[A] court need not await certain disaster to come into fruition before taking protective steps in the interest of a minor child.'" *In re Interest of Lilly S. & Vincent S.*, 298 Neb. 306, 316, 903 N.W.2d 651, 660 (2017). I conclude that the district court erred when it found that Oscar had carried his burden of proof to show that the ex parte domestic abuse protection order should be rescinded. I would reverse the order of the district court.