IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

KLEIN V. WERGIN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

MARIAH A. KLEIN, APPELLEE,

V.

BROCK A. WERGIN, APPELLANT.

Filed October 29, 2019.    No. A-19-017.

Appeal from the District Court for Lancaster County: SUSAN I. STRONG, Judge. Reversed and remanded with directions to vacate.

Sean M. Reagan and Megan E. Shupe, of Reagan, Melton & Delaney, L.L.P., for appellant.

DeAnn C. Stover for appellee.

MOORE, Chief Judge, and PIRTLE and WELCH, Judges.

PIRTLE, Judge.

## INTRODUCTION

Brock A. Wergin appeals the district court for Lancaster County's entry of a domestic abuse protection order against him. Wergin argues there was no evidence showing that he engaged in abusive behavior. We agree and thus reverse the judgment and remand the cause with directions to vacate the domestic abuse protection order.

## BACKGROUND

On November 8, 2018, Mariah A. Klein filed a "Petition and Affidavit to Obtain Domestic Abuse Protection Order" pursuant to Neb. Rev. Stat. § 42-924 (Cum. Supp. 2018), naming Wergin as the respondent. Klein identified three incidents of domestic abuse. First, she alleged that as of October 29, 2018, Wergin was being investigated for child pornography because he was allegedly

"making fake social media accounts and uploading pictures and videos without minors knowledge or concent [sic]."

In regard to the second incident, Klein alleged "continuous harassment by texts, calls, visits to my home, work, relatives['] homes and social media. Has not stopped since previous protection order has expired [in August or September 2017]. [U]sed threats, physical contact, contacts family member in a threatening manner. Has made false police reports pertaining to our minor child." Klein did not state a date or time frame for the second incident.

The third incident alleged by Klein does not contain a date or timeframe and the description stated: "Not returning [the parties'] minor child (Sophia) at agreed parenting times, threatening to keep child and not returning her to custodial parent me (Mariah)."

An "Ex Parte Domestic Abuse Protection Order" was entered, granting the relief requested in Klein's petition. Wergin requested a hearing on the matter pursuant to Neb. Rev. Stat. § 42-925 (Cum. Supp. 2018) to show cause why the protection order should not remain in effect.

At the show cause hearing, Klein testified that Wergin continually harasses her by showing up at her house, ringing her doorbell, pounding on her door, and screaming, which makes her feel unsafe. She testified that Wergin screams, "I'm going to see [their daughter]. You're going to pay for this." She testified that she has safety concerns for herself based upon the mental, physical, and emotional abuse she has endured the last 6 years. When asked what kind of threats he has made, she responded, "Just anything that he possibly can." She was asked if Wergin ever struck her and she responded, "Yes." No further questions were asked about her being struck.

Klein testified that she had not let Wergin see their daughter since mid- to late-October 2018 and the threats he made about seeing his daughter were made after that time. She testified that Wergin has come to her home for the purpose of trying to exercise his parenting time.

Klein also testified that on one occasion 4 or 5 months prior to the show cause hearing, Wergin grabbed her when she was picking up Sophia after Wergin's parenting time. She stated that the police were called. She testified that she filed for a protection order months later because Wergin became more violent and more aggressive. When asked to explain further, Klein testified that during visitation exchanges Wergin "would be aggressive, his tone, his voice, his manner, the way he carried himself." Klein admitted that there had been no physical contact by Wergin after the one time he grabbed her. She also admitted that any threats Wergin had made were not threats to physically harm her.

Klein's mother also testified. She testified that the police were called during one visitation exchange because Wergin had pushed Klein and was yelling. She stated that this happened in late summer 2018.

Wergin agreed that the police were called once during a visitation exchange. He testified that before the police were called, Klein had picked up Sophia from his house and the two of them were in the car to leave. Klein began texting Wergin about some of Sophia's belongings and a "heated" exchange of text messages followed. Klein testified that he was standing on his porch at the time and that he did not have physical contact or face to face contact with Klein during the exchange. Wergin testified that Klein's father, who was also in the car with Klein and Sophia, pulled the car into Wergin's driveway, got out of the car, and approached Wergin on his porch. At that point, Wergin told his girlfriend to call the police.

Wergin testified that he last saw Sophia in early October and continued to try to see her during his parenting times until he was served with the protection order. He testified that he had gone to Klein's house during his court-ordered parenting times but has never demanded anything. He testified that he had never pounded or banged on her door and had never yelled anything outside her home. He further testified that the only threats he has made to Klein are threats to take her to court for not letting him see or speak to Sophia.

Following the hearing, the court entered an "Order Affirming Domestic Abuse Protection Order." It did not make specific factual findings. The order affirmed the ex parte domestic abuse protection order issued on November 8, 2018, and ordered it to remain in full force and effect for 1 year from that date, unless modified by order of the court.

ASSIGNMENT OF ERROR

Wergin assigns that the trial court erred in affirming the ex parte domestic abuse protection order against him.

STANDARD OF REVIEW

A protection order pursuant to § 42-924 is analogous to an injunction. Thus, the grant or denial of a protection order is reviewed de novo on the record. In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Maria A. on behalf of Leslie G. v. Oscar G.*, 301 Neb. 673, 919 N.W.2d 841 (2018).

ANALYSIS

Wergin argues that the trial court erred in affirming the ex parte domestic protection order and continuing it for a period of one year because the evidence did not show that he engaged in any conduct constituting domestic abuse under Neb. Rev. Stat. § 42-903 (Cum. Supp. 2018).

The Protection from Domestic Abuse Act, Neb. Rev. Stat. § 42-901 et seq. (Reissue 2016 & Cum. Supp. 2018) (the Act), provides that a victim of domestic abuse may file a petition and affidavit for a protection order with the clerk of the district court. § 42-924. For the purposes of the Act, abuse is defined by § 42-903(1) as the occurrence of one or more of the following acts between family or household members:

> (a) Attempting to cause or intentionally and knowingly causing bodily injury with or without a dangerous instrument;

> (b) Placing, by means of credible threat, another person in fear of bodily injury. For purposes of this subdivision, credible threat means a verbal or written threat, including a threat performed through the use of an electronic communication device, or a threat implied by a pattern of conduct or a combination of verbal, written, or electronically communicated statements and conduct that is made by a person with the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her family . . . or

(c) Engaging in sexual contact or sexual penetration without consent as defined in section 28-318.

For purposes of the Act, "family or household members" includes persons who have a child in common whether or not they have been married or have lived together at any time. § 42-903(3).

Whether domestic abuse occurred is a threshold issue in determining whether an ex parte protection order should be affirmed; absent abuse as defined by § 42-903, a protection order may not remain in effect. See *Maria A. on behalf of Leslie G. v. Oscar G., supra.*

The trial court found that domestic abuse occurred as defined by § 42-903(1). We do not agree. Although the trial court did not state which subsection of § 42-903(1) was met, we determine that the evidence was insufficient to prove any of the subsections.

Starting with § 42-903(1)(c), Klein was required to prove that she was the victim of sexual contact or sexual penetration without consent. There was no evidence to support this subsection and neither party contends that there was such evidence.

Under § 42-903(1)(b), Klein was required to prove that Wergin had placed her in fear of bodily injury by means of credible threat. The only evidence of a threat was Klein's testimony that Wergin told her "I'm going to see her [Sophia]. You're going to pay for this." Klein testified that this "threat" was made during a time when she was not allowing Wergin to see Sophia. Klein further testified that any threats by Wergin were not threats to physically harm her. The "credible threat" language in § 42-903 has been interpreted to mean that the evidence at trial must include some threat of intentional physical injury or any other physical threat. *Linda N. v. William N.*, 289 Neb. 607, 856 N.W.2d 436 (2014). Therefore, there was no evidence that Klein was placed in fear of bodily harm based on threats by Wergin.

Finally, under § 42-903(1)(a), Klein was required to prove that Wergin had attempted to cause or had intentionally and knowingly caused bodily injury with or without a dangerous instrument. Klein testified that Wergin had struck her at some point in the past. However, there was no indication of when, how, or where this occurred, and no evidence that any bodily injury occurred. Klein also testified that Wergin had grabbed her in July or August 2018 at a parenting exchange. Klein testified that after the incident where Wergin grabbed her, his tone, voice, manner, and the way he carried himself became more aggressive. Klein's mother testified that she saw Wergin push Klein at a parenting exchange in late summer 2018. Again, there was no evidence of bodily injury in regard to the grabbing or pushing incident. Thus, we conclude that Klein failed to present evidence that Wergin attempted to cause or had intentionally and knowingly caused bodily injury with or without a dangerous instrument.

Because there was no evidence offered at the protection order hearing to prove abuse, as defined by § 42-903(1), the trial court erred in entering a domestic abuse protection order against Wergin.

We note that a trial court has discretion, authority, and jurisdiction to issue a harassment protection order, even though the petitioner had filed a petition for a domestic abuse protection order. *Linda N. v. William N., supra.* In the present case however, Klein did not ask the trial court to consider entering a harassment protection order and this court will not consider whether the trial court should have instead issued a harassment protection order. See *id.*

## CONCLUSION

We conclude that the trial court erred in granting a domestic abuse protection order because there was no evidence of "abuse" by Wergin as defined by § 42-903(1). We reverse the judgment and remand the cause with directions to vacate the order.

REVERSED AND REMANDED WITH
DIRECTIONS TO VACATE.