IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

VILLA V. GASA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

ESTEFANIA VILLA, APPELLANT,

V.

BLEDAR GASA, APPELLEE.

Filed August 8, 2023.    No. A-22-923.

Appeal from the District Court for Sarpy County: GEORGE A. THOMPSON, Judge. Affirmed.

Jamie C. Cooper and Andrea L. Hardesty, of Johnson & Pekny, L.L.C., for appellant.

No brief for appellee.

PIRTLE, Chief Judge, and MOORE and RIEDMANN, Judges.

PIRTLE, Chief Judge.

## INTRODUCTION

Estefania Villa appeals from the district court for Sarpy County which entered an order dismissing an ex parte domestic abuse protection order that had previously been entered against Villa's ex-boyfriend, Bledar Gasa. For the reasons that follow, we affirm.

## BACKGROUND

In October 2022, Villa filed a petition and affidavit to obtain a domestic abuse protection order against Gasa. Villa's affidavit alleged three distinct incidents, the first of which occurred in June 2022. According to the affidavit, Villa and Gasa were on vacation and got into an argument which led to Gasa becoming violent and physically abusive toward Villa. Specifically, Villa alleged that Gasa slapped her and choked her, which caused Villa to fear that Gasa was going to kill her. The second alleged incident occurred in July 2022. Villa alleged that she went to Gasa's home to retrieve some of her property and that the two started arguing. Villa alleged that Gasa put

a gun in his waist band to intimidate her, and that he started "grabbing my arms and telling me I am stupid."

The third and final alleged incident occurred in October 2022. Villa alleged that she went to Gasa's home to retrieve her vehicle and Gasa "attacked" her. Villa alleged that Gasa "grabbed my arms and tried throwing me out of the house" and then he "grabbed my hands and threw me down the stairs," causing injury to Villa's left hand. Villa further alleged that while she was on the floor, Gasa "got on top of me and bit my right arm." Gasa then "started to spit in my face," and when Villa tried to get to the kitchen, Gasa "followed me and grabbed me from behind by my hair and pulled me down to the floor." Villa alleged that, after some continued arguing and name-calling, Gasa threatened to hurt her family if she filed a police report.

The district court entered an ex parte domestic abuse protection order against Gasa pursuant to Neb. Rev. Stat. §§ 42-924 and 42-925 (Cum. Supp. 2022). Gasa filed a timely request for a hearing to show cause as to why the protection order should not remain in effect, and the district court set the matter for hearing. Gasa testified that he and Villa had been in a romantic relationship for about a year and a half prior to June 2022. During the relationship, Villa lived with Gasa in his home, and Gasa had purchased a car for Villa to use during that time.

Gasa testified that he and Villa ended their relationship in June 2022, following the vacation referenced in Villa's affidavit. Gasa admitted that he and Villa got into an argument while on vacation but denied that the argument ever became physical, and he specifically denied choking or slapping Villa as she alleged. Gasa testified that he blocked Villa from contacting him via phone or social media following the breakup and made it "very clear" that he no longer wished to speak to her, but that Villa obtained a new number and continued to reach out to him.

With respect to the July 2022 incident, Gasa similarly denied any physical altercation between him and Villa. Gasa testified that Villa came to retrieve her "clothes and all that stuff" from his home, but then she refused to leave. Gasa admitted that he owns two firearms, but he denied using them to intimidate Villa, and he testified that the guns remained locked in a safe throughout the incident. Gasa explained "they were in the safe . . . I didn't want her to grab the safe . . . [s]o I took it and I put it in my truck." On cross-examination, Villa's attorney again asked why Gasa would grab his guns, and he elaborated as follows:

> Because she wouldn't leave. She came over to pick up her stuff, and she wouldn't leave. She had everything in her car, but she still wouldn't leave. So I went inside, and the way she was acting, I didn't trust her. I didn't know what she was going to do.

Gasa explained that Villa ultimately slept in his bed that night, causing him to sleep in another room. Gasa further testified that there were additional instances between July and October 2022 when Villa came to his home unannounced, including at least one incident in which Villa used a garage door remote to gain access to the home without Gasa's permission and again refused to leave until the next morning.

With respect to the October 2022 incident, Gasa testified that Villa came to his home uninvited and the two got into an argument. Gasa denied throwing Villa down the stairs, biting her arm, or grabbing her by the hair. Gasa testified that the only physical confrontation between him and Villa occurred when "I tried blocking her from getting downstairs in my basement or trying to go upstairs." Gasa admitted to yelling and to throwing some of Villa's property outside.

Villa's testimony was delivered in Spanish and translated by a court certified interpreter. Villa explained that she dictated the allegations in her petition to an otherwise unidentified individual named "Kelly." Villa's testimony largely reiterated the allegations in her petition, but she also corroborated Gasa's account of certain events, including that she "spent the night" at Gasa's house following the July 2022 incident. Villa also explained that she understood Gasa to have given her an "open invitation" to enter his house "whenever I could." Villa further testified that images admitted into evidence as exhibit 3 portrayed the injuries she sustained from Gasa biting her arm and pulling on her hands.

After the hearing, the court entered an order dismissing the ex parte protection order on the grounds that Villa failed to establish the truth of the allegations contained in her petition and that Gasa had shown cause as to why the protection order should be denied. The court made the following specific findings: "The Court, having seen and observed the witnesses, finds credibility issues with both litigants. When in conflict, the Court resolved factual disputes in favor of [Gasa]. The Court finds that the injury identified [sic] Exhibit #3 did not meet [Villa's] testimonial description." Villa appealed.

## ASSIGNMENTS OF ERROR

Villa assigns that the district court erred in (1) finding that Villa failed to meet her burden to establish the truth of the facts alleged in her petition and affidavit, (2) finding that Gasa had shown cause as to why the ex parte domestic abuse protection order should not remain in effect, and (3) resolving factual disputes in favor of Gasa.

## STANDARD OF REVIEW

A protection order pursuant to § 42-924 is analogous to an injunction. *Maria A. on behalf of Leslie G. v. Oscar G.*, 301 Neb. 673, 919 N.W.2d 841 (2018). Thus, the grant or denial of a protection order is reviewed de novo on the record. *Id.* In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. *Id.* However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of facts rather than another. *Id.*

## ANALYSIS

Each of Villa's assignments of error essentially challenges the district court's credibility findings and the impact such findings had on the ultimate issues of the case. Villa first assigns that the district court erred in finding that Villa failed to meet her burden to prove the allegations in her petition and affidavit. Villa's argument simply points to her testimony at the hearing and the photographs of her alleged injuries. Villa argues that "[b]ecause [she] testified that the allegations of abuse were true and provided photographs to evidence the abuse, [she] met her burden of proof." Brief for appellant at 16. However, the difficulty is that the district court specifically found that neither Villa's testimony nor the photographic evidence she provided were credible evidence of the alleged abuse. Giving weight to the district court's credibility findings in that regard, we cannot say the district court erred in finding that Villa failed to meet her burden to prove the allegations of abuse.

Villa next assigns that the district court erred in finding that Gasa had shown cause as to why the ex parte protection order should not remain in effect. Villa argues that "[Gasa's] testimony was not credible while [Villa's] was corroborated by proof, the photos of the injuries she suffered." Brief for appellant at 17. Villa also points to certain inconsistencies in Gasa's testimony and his admissions to arguing and being "upset." Yet, Gasa specifically denied the pertinent allegations raised by Villa regarding physical altercations and abuse. Once again, giving weight to the credibility findings of the district court, we cannot say the court erred in finding that Gasa had shown cause as to why the ex parte protection order should not remain in effect.

Finally, Villa assigns that the district court erred in resolving factual disputes in favor of Gasa. Villa acknowledges that our standard of review permits deference to the district court on the issue of credibility, however, she argues that the district court "failed to recognize" relevant factors such as "the parties' relationship history, the various incidents listed in the Affidavit, and [Gasa's] pattern of abusive conduct." Brief for appellant at 18. We disagree.

The record is clear that the district court had access to and took note of the allegations in the affidavit and the nature of the parties' relationship history. Rather than failing to account for the alleged pattern of abusive conduct by Gasa, the district court simply concluded that Villa failed to meet her burden to prove those allegations. Villa's argument to the contrary relies almost exclusively on her own testimony. Giving weight to the district court's credibility findings in that regard, we cannot say the district court erred in resolving factual disputes in favor of Gasa.

CONCLUSION

For the foregoing reasons, we affirm the order of the district court dismissing the ex parte domestic abuse protection order.

AFFIRMED.